**A. H. BELO CORPORATION v. STREET, Regional Director of Wage and Hour Law, et al.**

**FLEMING, Administrator, Wage and Hour Division, v. A. H. BELO CORPORATION.**

**Nos. 301, 308.**

District Court, N. D. Texas, Dallas Division.

Feb. 4, 1941.

Locke, Locke, Dyer & Purnell, of Dallas, Tex., for Belo Corporation.

George B. Searls, Atty., Wage and Hour Division, United States Department of Labor, of Washington, D. C., and Llewellyn B. Duke, Regional Atty., Wage and Hour Division, United States Department of Labor, of Dallas, Tex., for defendant Street and Administrator Fleming.

ATWELL, District Judge.

On July 26, 1940, Belo Corporation filed a suit against Street, Truly, Finklea and Buckner, wherein a declaratory judgment was sought and suggested that defendant Street claimed to be a representative of employees. The court, after having heard the pleadings and the views of the parties with reference to that suit, concluded that the defendant Street could act both as an official of the wage and hour department, and individually, and retained the suit against the motion to dismiss, which was based upon the fact that the Administrator was not a party, on the ground that Mr. Street could become the representative plaintiff for dissatisfied employees or complaining coemployees, or of employees. A. H. Belo Corporation v. Street, D.C., 35 F.Supp. 430. That authority is now challenged by the government by the mere statement that Street has no authority to sue, either as an official or as a private citizen. The challenge is merely offered, there is nothing offered to support it. The law says that he or anyone else can appear as a private citizen, as a representative of the employee.

After that suit was filed, and retained by the court upon a hearing, the Administrator filed suit No. 308, against the Belo Corporation, seeking an injunction against that corporation continuing its manner of paying and complying with the Wage-Hour Act, 29 U.S.C.A. § 201 et seq. Suggestions were made with reference to consolidation of the two causes and to a dismissal of one of them, and the idea that the declaratory judgment was not necessary, since a suit against

the identical point had been filed. The court thought that since it was of the view that Mr. Street could appear in his capacity as a private citizen to represent the employees, that the suggestion to try together should be favorably acted upon, but that there would continue to be two suits. That program has been followed, and testimony was first offered with reference to the claim of the department, that there was a complaining employee. The testimony shows indisputably, and it has not been disputed, that the Department so claimed, but declined to disclose the name of such employee. A rather unusual procedure, but that is the procedure. that the Department chose to follow. It either had such complaint or it did not have, if it had such a complaint, it should be disclosed to the court. If it had such a complaint, it had a right to appear for that complainant, or any others, so we are met at the threshold of the appeal for equity by the failure of the government to disclose in good faith the ground of its activity, if it was necessary for it to have a ground other than the law itself, which the government is charged with enforcing.

Upon that particular feature, the court finds that there was no justification for that claim by Street or by the Department. That if there had been any such complaint, that it was the duty to disclose it to the citizen so that it could be remedied. We do not fix traps for people, and the chancellor cannot approve a course of that sort.

The second suit offers considerable difficulty. Fine counsel here have exposed their views with reference to this Act. I have not had the benefit, if there is such benefit, of the discussions in the committee by the Congress when this Act was under consideration, but I cannot conceive of a law which, because it is a law, becomes universal in its application, that would unsettle amicability between employer and employees by interfering with their agreement, provided such agreement is equal to, or, in excess of, the legal requirement with reference to pay. That was the reason for the statute. In order to have those of us who work for what we get commensurately paid the Congress thought that the fixing of a minimum wage would result in a better situation. That minimum wage, of course, does not preclude higher wages than the minimum

wage, and there is no effort in this case by the employer to bind the employee to the legal minimum wage; on the contrary, it never has paid less than the minimum wage to its employees, with the few exceptions of some office boys, I think we may say.

The testimony shows that all of the employees, after the passage of the Act, as was true before the passage of the Act, received larger sums than the minimum wage law requires employees to receive. But it is contended by the government that when an employer and an employee make an agreement for a higher wage, that that higher wage which includes larger payments, must be used in figuring the overtime of such employee, if and when such employee works overtime. It must be borne in mind that this statute does not prevent overtime. It does not say that a full-grown man or woman employee shall not work overtime. It does not say that they shall not work more than so many hours, it merely pretends to be and is a statute against less than a minimum wage.

■ Now, Mr. Searls is correct in saying that the statute prohibits a rate less than one and one-half times the regular rate, but the statute then continues, "at which he is employed." So while Congress struck down the right of an employee to contract for less than a minimum wage, it did not strike down the right of the employee and the employer to contract with reference to the wages which are in excess of minimum wages, and that is the way these employees have done.

I don't know that the court is concerned with this, but when we find that a certain construction of a statute results in a clumsy, interminable effort to find out what it means, or, to figure, and the government has a right to go and figure, even to go into the office of the employer and find out whether the employer is treating his employee correctly or not, if and when that results, in an almost endless burden, to seek to put into effect a plan that has been detailed to the court, and which disappears if carried to excessive length, I cannot believe that that construction should be indulged in. It emasculates the right of contract. It emasculates the fullness of the meaning of the word employee. It makes vassals of employee and employer and leaves us hanging by the thumbs at the mercy of the construction of the government as to what we mean when we

contract. The government merely says to us, "Don't you employ a man and pay him less than this amount." Pay him all the more you can. This court held that in a very interesting case a year or two ago, and that is correct. You do not hold the employee down to any figure, you let him go and get all he can, but he certainly has the right and certainly is free to bargain with his employer as to what he shall get, provided he does not go lower than the law. The law is universal but was directed at an evil. It was not intended to punish the good—or to enslave the free.

These two suits spark from a clash in systems. Neither is perfect. One fixes the independent week for the sine quo non. The other fixes the will of the contracting parties, provided, such will is above the denials of the law, as the summum bonum. One includes the right to say when payrolls shall be made. The other views the regularity of pay checks as the most important. One is cumbersome and irregular. The other is simple and regular. One is the child of unauthorized regulation. The other is the child of liberty. One deals only in dollars and cents. The other with happiness of employer and employee, vacations, pay when sick, or, absent, as well as with dollars and cents. Neither system is fixed by statute. Since the citizen is free to keep the law by going in any direction he chooses, he may not be compelled to forego that right.

Upon the other question of interstate commerce, I do not see any more logic in that contention of the defendant than there is in the contention of the plaintiff as to this figuring of the wage and hour. Of course, the News is engaged in interstate commerce. It sends its papers everywhere. It receives supplies and news from abroad. It is a great institution. Radio is interstate commerce, that has been decided long ago by this court at Abilene, when the radio cases first came up, and it never has been questioned, that I know of.

So I think the decree is and should be that a declaration go in 301 for the plaintiff, as the court understands it here, for the method followed by the complainant in that case, and that it should not be interfered with by Street. And that as to No. 308, the bill is dismissed.