## MISSEL v. OVERNIGHT MOTOR TRANSP. CO., Inc.

### Civ. No. 901.

District Court, D. Maryland.

July 28, 1941.

William O. Tydings and George A. Mahone, both of Baltimore, Md., for plaintiff.

John R. Norris and Clayton W. Daneker, both of Baltimore, Md., for defendant.

J. Ninian Beall, of Washington, D. C., for American Trucking Ass'ns, Inc.

COLEMAN, District Judge.

This is a suit brought in reliance upon the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201 to 219, inclusive, by the plaintiff, an employee of the defendant, to recover additional wages or salary alleged to be due him, together with penalties, attorney's fee and costs.

It appears from the stipulation of facts filed in the case that the plaintiff was employed by the defendant, a common car-

rier of freight in interstate commerce by motor vehicle, as a rate clerk, his duties also embracing at times the receipt and disbursement of cash freight revenue, and the dispatching of defendant's trucks.

The period of employment here involved is approximately two years, from October 24, 1938, to October 19, 1940. Prior to November 1, 1938, plaintiff received a salary of $23 a week plus $2.50 per week allowance for supper money, or a total of $25.50; but from the latter date until October 19, 1940, when his employment with the defendant ceased, he received a salary of $25 per week plus the $2.50 allowance, or a total of $27.50 per week. It is conceded that the supper money allowance is properly to be treated as part of plaintiff's wages in interpreting his rights under the Act. Section 3(m), 29 U.S.C.A. § 203(m). His contract of employment is not evidenced by any writing. The company kept no record of the number of hours that plaintiff worked during the period here involved prior to June 14, 1940, since it had been decided by the District Court for the District of Columbia that employees such as the plaintiff were not subject to the provisions of the Fair Labor Standards Act (American Trucking Associations v. United States, D. C., 31 F.Supp. 35), and the Supreme Court had not yet reversed this decision which it did on May 27, 1940. See United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 1069, 84 L.Ed. 1345. The plaintiff, however, did keep an account of the hours he worked for thirty weeks (not all consecutive) between September, 1939 and October, 1940, that is, for less than one-third of the total period of plaintiff's employment. This data shows that during this period of thirty weeks, plaintiff worked on an average of sixty-five hours a week. But it also appears that plaintiff was hired to work for no specific number of hours per day or week; that his periods of work varied greatly from day to day; that he regulated his on-duty hours according to his own judgment as to what was necessary; that his work weeks ended on Thursday; that he was paid his weekly salary regardless of absent time; that for at least two work weeks during the period from October 24, 1938, to October 23, 1939, he was on duty as long as eighty hours, and that in at least three of the weeks during the period from October 23, 1939, until he left the Company, namely,

October 19, 1940, he was on duty as much as seventy-five hours.

Since, as above explained, plaintiff has only a partial record of the hours he claims to have worked, he has submitted figures for only a portion of what he claims to be due him amounting to $604.90 but approximates the total at $1,700. He also claims an additional amount as liquidated damages equal to such unpaid compensation as may be found to be due him, making the total claimed as salary or wages approximately $3,400, together with reasonable attorney's fee and costs of the action, relying upon the provisions of section 16(b) of the Act, 29 U.S.C.A. § 216(b).

This case was previously before the Court on a motion of the defendant to dismiss the bill of complaint, on the ground that this Court had no jurisdiction to determine, in advance of a ruling by the Interstate Commerce Commission, whether the plaintiff is one whose activities affect the safety of operation of interstate motor vehicles, within the meaning of Sec. 13(b) (1) of the Fair Labor Standards Act, 29 U.S.C.A. § 213(b) (1), exempting employees with respect to whom the Commission has power to establish requirements concerning qualifications and maximum hours for service. This section is as follows: "The provisions of section 207 [fixing maximum hours of work] shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49; * * *."

49 U.S.C.A. § 304(a) (1) and (2) which is part of the Motor Carrier Act of 1935, provides as follows:

*"Powers and duties generally.* It shall be the duty of the Commission—

"(1) To regulate common carriers by motor vehicle as provided in this chapter, and to that end, the Commission may establish reasonable requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment.

"(2) To regulate contract carriers by motor vehicle as provided in this chapter,

and to that end the Commission may establish reasonable requirements with respect to uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment."

We overruled defendant's motion, since the above-quoted exemption in Section 13(b) (1) of the Fair Labor Standards Act embraces only those employees with respect to whom the Interstate Commerce Commission "has power" to establish requirements as to qualifications and maximum hours of service; since the Supreme Court, in United States v. American Trucking Associations, supra, limited such "power" to those employees "whose activities affect the safety of operation"; and since plaintiff's activities cannot be said to "affect the safety of operation" because they have only a most remote relation to the actual movement of motor vehicles falling under the jurisdiction of the Interstate Commerce Commission. Missel v. Overnight Motor Transportation Co., D. C., 36 F.Supp. 980.

Following our disposition of the motion to dismiss the bill of complaint, the defendant answered and the case is now before us on its merits. American Trucking Associations, Inc., was permitted to intervene as amicus curiæ, it being the national trade association of the trucking industry, and the defendant being one of its members.

The pertinent provisions of the Fair Labor Standards Act are the following: Sec. 6(a) and (b):

"(a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—

"(1) during the first year from the effective date of this section, not less than 25 cents an hour,

"(2) during the next six years from such date, not less than 30 cents an hour,

"(3) after the expiration of seven years from such date, not less than 40 cents an hour, or the rate (not less than 30 cents an hour) prescribed in the applicable order of the Administrator issued under section 208, whichever is lower, and

"(4) at any time after the effective date of this section, not less than the rate (not in excess of 40 cents an hour) prescribed in the applicable order of the Administrator issued under section 208.

\* \* \* \* \* \*

"(b) This section shall take effect upon the expiration of one hundred and twenty days from the date of enactment of this chapter. \* \* \*" 29 U.S.C.A. § 206(a) and (b).

Sec. 7(a):

"(a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

"(2) for a workweek longer than forty-two hours during the second year from such date, or

"(3) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. \* \* \*" 29 U.S.C.A. § 207(a).

It is conceded that at all times during the period of employment here in question both the $25.50 and the $27.50 weekly rate which plaintiff received was greater than the total minimum wages prescribed by the Act for the maximum hours for the work weeks as provided in the Act, plus one and one-half times such minimum wages for all hours which he worked in excess of such stipulated maximum hours. Nevertheless, plaintiff contends that under the Act the amount of compensation due him by the terms of his employment by the defendant for all overtime must be determined by one and one-half times a rate found by dividing his weekly salary (1) by the number of hours actually worked per week; or (2) by the statutory work week hours. Plaintiff further asserts that since data is lacking with respect to the total number of hours in excess of the statutory maximums actually worked by him during most of the period in question, the Court should strike an average in applying the first of the aforegoing formulae. In short, while plaintiff had agreed to work, and did work for almost two years after the Act became effective at the annual compensation of $1,430 or $2,860 for the two year period here in

question, he now claims he should be paid retroactively $3,400 additional,—in all considerably more than double his agreed and accepted compensation.

As illustrative of the two methods of computation urged as alternates by the plaintiff, we will take sixty-five hours per week as the assumed average which plaintiff worked throughout the period in question, this being the average for the short period for which there are any records. Deducting from this the statutory maximum of forty-four hours, there is overtime of twenty-one hours. Sixty-five divided into the actual salary paid plaintiff, namely, $27.50, gives an hourly rate of 42½ cents, which, multiplied by forty-four hours, equals $18.70. Then, multiplying the overtime hours, namely, twenty-one, by one and one-half times this rate or 63¾ cents, we get $13.38¾ or a total of $32.08¾, that is to say $4.58¾ in excess of what the plaintiff actually received. Similarly, to illustrate the second or alternate method urged by plaintiff for computing the amount of compensation due him, namely, dividing his weekly rate by the statutory hour maximum, namely, forty-four, we obtain an hourly rate of 62½ cents, or 93¾ cents for the overtime rate for twenty-one hours, giving a total for overtime of $19.68¾ which, added to $27.-50, gives a total of $47.18¾, or $19.68¾ per week in excess of what plaintiff has actually been paid.

The defendant company, on the other hand, contends that since plaintiff was employed at a weekly salary to do a job rather than to work on a schedule of hours, because that job necessarily involved irregular, fluctuating periods of work per day, the sole effect of the Fair Labor Standards Act upon employment of this kind is to fix a floor, or minimum wage, below which it is not permissible to contract; that is to say, that an employer must pay the employee not less than 25 cents per work week comprising forty-four hours (taking the rate for the first year that the Act became effective), and not less than one and one-half times this minimum rate of 25 cents per hour for all hours worked in any one work week in excess of forty-four hours, but that the Act does not otherwise reform existing contracts or impair freedom to contract.

For example, defendant asserts that with respect to each of the two work weeks during the period from October 24, 1938, to October 23, 1939, that plaintiff claims he was on duty for eighty hours, for the purpose of determining whether the requirements of the Act have been satisfied, his minimum pay is to be determined by computing the wage for forty-four hours at 25 cents per hour or $11, and then by computing the wage for the additional hours, namely, thirty-six, at 37½ cents per hour (one and one-half times 25 cents) or $13.50, making a total of $24.-50, which is less than the weekly salary actually paid at all times during the period here involved.

In United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430, the Supreme Court sustained the constitutionality of the Fair Labor Standards Act of 1938, holding, in a suit directly involving the criminal provisions of the Act, that this legislation was within the commerce power and consistent with the Fifth and Tenth Amendments. It held that the wage and hour provisions of the Act do not violate the due process clause of the Fifth Amendment, saying (312 U.S. at page 125, 61 S.Ct. at page 462): "Both provisions are minimum wage requirements compelling the payment of a minimum standard wage with a prescribed increased wage for overtime [of 'not less than one and one-half times the regular rate' at which the worker is employed]." However, we find nothing in the decision in the Darby case which can be taken as an adjudication of the precise question now before this Court, which is not one of constitutionality, but of the interpretation and effect upon a contract of employment, such as that between the present plaintiff and defendant, of the provision of Section 7 of the Act prohibiting a longer work week than specified in that section, unless the employee is paid for overtime "at a rate not less than one and one-half times the regular rate at which he is employed." In other words, the question presented for decision here is: At what "regular rate" per hour, if any, within a proper interpretation of the words and meaning of the Act, was plaintiff employed?

■ It is significant that the Act contains no prohibition against or limitation upon working extra hours, and no prohibition against or limitation upon the making of agreements by employers with employees. It is clear that the underlying purpose of the Act is to establish and

gradually to raise minimum wages; that the overtime provisions in it were not inserted in order to discourage or limit overtime work, but merely as an essential part of a plan to raise sub-standard wages by providing definite pay for overtime work when such may be required, and that there is nothing in the Act which purports to impair the right of employer and employee to contract in a manner not inconsistent with this basic scheme. As the Supreme Court said in United States v. Darby, supra, 312 U.S. at pages 109, 110, 61 S.Ct. at page 454, 85 L.Ed. 609, 132 A.L.R. 1430: "The Fair Labor Standards Act set up a comprehensive legislative scheme for preventing the shipment in interstate commerce of certain products and commodities produced in the United States under labor conditions as respects wages and hours which fail to conform to standards set up by the Act. Its purpose, as we judicially know from the declaration of policy in § 2(a) of the Act, and the reports of Congressional committees proposing the legislation, S.Rept. No. 884, 75th Cong. 1st Sess.; H.Rept. No. 1452, 75th Cong. 1st Sess.; H.Rept. No. 2182, 75th Cong. 3d Sess., Conference Report, H.Rept. No. 2738, 75th Cong. 3d Sess., is to exclude from interstate commerce goods produced for the commerce and to prevent their production for interstate commerce, under conditions detrimental to the maintenance of the minimum standards of living necessary for health and general well-being; and to prevent the use of interstate commerce as the means of competition in the distribution of goods so produced, and as the means of spreading and perpetuating such substandard labor conditions among the workers of the several states. The Act also sets up an administrative procedure whereby those standards may from time to time be modified generally as to industries subject to the Act or within an industry in accordance with specified standards, by an administrator acting in collaboration with 'Industry Committees' appointed by him."

What, then, is the correct interpretation to be given to the phrase "regular rate at which he is employed", as used in the proviso of Section 7(a) of the Act when applied to employment such as that in which the plaintiff was engaged? At first blush, it may be said that these words are not ambiguous; that wherever weekly salaries are paid, no matter how freely and voluntarily agreed to, the "regular rate" referred to in the statute must invariably be determined, as plaintiff here contends, by dividing the actual weekly compensation by either the total number of hours the employee actually works during each work week, or by the statutory number of hours to which the statutory minimum wage applies for the particular period, and then multiplying the number of overtime hours by one and one-half times the rate obtained by one or the other of these methods. The Supreme Court said in United States v. American Trucking Associations, Inc., supra, 310 U.S. at page 543, 60 S.Ct. at page 1063, 84 L.Ed. 1345: "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation." But, as the Supreme Court went on to say, (310 U.S. at pages 543, 544, 60 S.Ct. at page 1063): "When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.' The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function. This duty requires one body of public servants, the judges, to construe the meaning of what another body, the legislators, has said. Obviously there is danger that the courts' conclusion as to legislative purpose will be unconsciously influenced by the judges' own views or by factors not considered by the enacting body. A lively appreciation of the danger is the best assurance of escape from its threat but hardly justifies an acceptance of a literal interpretation dogma which withholds from the courts available information for reaching a correct conclusion. *Emphasis should be laid, too,*

*upon the necessity for appraisal of the purposes as a whole of Congress in analyzing 'the meaning of clauses or sections of general acts. A few words of general connotation appearing in the text of statutes should not be given a wide meaning, contrary to a settled policy, 'excepting as a different purpose is plainly shown.'"* (Italics inserted.)

■ We conclude that to give to the words, "the regular rate at which he is employed", the strictly literal interpretation for which plaintiff contends, would produce an unreasonable result at variance with what we understand to be the basic principle of the Fair Labor Standards Act. It is to be noted that there is no suggestion in the present case of any attempt on the part of the employer, the defendant, to evade the requirements of the Act. On the contrary, the facts as stipulated disclose that after the Act became effective, plaintiff's wages were increased, although, as hereinbefore explained, what plaintiff had previously been paid was in excess of the Act's minimum requirements. It is further to be noted that from the very nature of plaintiff's employment it would have been extremely difficult if not practically impossible to make a fair working agreement based on hours of work, in view of the great variation from day to day in the length of time that plaintiff might be required to work. In short, we conclude that the only "regular rate" at which plaintiff was employed was the weekly rate; and that since this rate did not afford less, but more, compensation to plaintiff than that afforded by applying the minimum rate stipulated in the Act to the stipulated maximum hours for a regular work week, and one and one-half times such minimum rate to the maximum overtime hours actually worked by plaintiff as disclosed by such records as are available, the Act has not been violated.

Unfortunately, no help with respect to this precise question is to be derived from the Committee hearings in Congress or from conference reports. Legislation which finally resulted in the passage of this particular Act was pending before Congress for two years or more. The House and the Senate each passed radically different bills. Conferees were appointed and according to the usual procedure, their efforts ultimately resulted in the drafting and passage of a composite compromise measure. We do, however, find the following in the Conference Report with reference to the Senate bill (Congressional Record, page 9251, June 14, 1938): "Sec. 9. * * * and the policy is declared that orders relating to wages shall affect only those employees who need legislative protection and shall not interfere with the voluntary establishment of appropriate differentials and higher standards for other employees in the occupation."

While plaintiff's position appears to be supported by the current ruling of the Administrator, Wage and Hour Division of the Department of Labor, who is charged with the administration of the Act (see Interpretative Bulletin No. 4, 1940 Wage and Hour Manual, 95, 96), it is significant that a former Administrator apparently held a different view (Labor Relations Reporter of October 24, 1938; 3 W.H.R. 228); and as late as April 14, 1941, we find an opinion by an Assistant Solicitor of the Wage and Hour Division to the following effect (4 W.H.R. 181): "The test is, does the employer hire the employee at a salary for a certain number of hours and does he, therefore, owe the employee additional compensation on a pro rata basis when that specified number of hours is exceeded; or can the employer successfully contend that the facts and circumstances of employment are such that the salary is the employee's regular compensation for all hours worked, no matter what the exact number of hours may be. * * * In summing up, we may state the rule as follows: Given an employee employed on a salary basis it is necessary to determine as a matter of fact how many hours of work per workweek the employer may exact from the employee in exchange for such salary. As we stated before, the answer to such question depends upon an examination and evaluation of all of the pertinent facts and circumstances in a given case. We have to know when an employee works 60 hours and receives a salary of $30 in a given workweek, whether or not that $30 is all the employer owes the employee as his regular compensation for a workweek of such length. A test such as the following may prove workable: Is the salaried employee hired to do a job rather than to work a schedule of hours? Does the job necessarily involve irregular or fluctuating hours per day or week? The questions taken together constitute a

single test; one question is not complete in itself."

In Remer v. Czaja, D.C., 36 F.Supp. 629, this Court ruled that an employee whose wages were not reduced below the minimum requirements of the Fair Labor Standards Act, although his wage reduction occurred at the time when wages of fellow employees were increased to meet these minimum requirements could not recover from his employer the amount of wages of which he was deprived by such reduction. While that decision did not involve the precise question here in issue but had to do with the interpretation to be placed on the last sentence of Section 18 of the Act, 29 U.S.C.A. § 218, which reads as follows: "No provision of this chapter shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this chapter, or justify any employer in increasing hours of employment maintained by him which are shorter than the maximum hours applicable under this chapter," the underlying principle which governed this Court in its decision in that case is the same which it is believed must control here.

Our conclusion also finds support in at least two decisions of other District Courts: Reeves v. Howard County Refining Co., 33 F.Supp. 90, a decision of the District Court for the Northern District of Texas, and Fleming v. A. H. Belo Corp., 36 F. Supp. 907, a decision by the same Court, which very recently has been affirmed by the Circuit Court of Appeals, Fifth Circuit. Fleming, Administrator v. A. H. Belo Corp., 121 F.2d 207. In the Reeves case, the wages of several employees of a refining company were involved. While the Court found that the minimum rates provided by the Act had not been met in all cases, in one instance where further compensation was denied, the Court said (33 F.Supp. at page 91): "Considering the number of hours actually worked, this pay exceeds the minimum time and overtime provided by the Act, and therefore complied with the Act, and the Court finds that C. C. Reeves is not entitled to recover anything from defendant, he having entered into a contract for a stipulated consideration which is in excess of the minimum wage fixed by law, and that he had a right to make such agreement, and having entered into such agreement, he is bound thereby."

In the A. H. Belo Corporation case, the appellate court, in affirming the decision of the lower Court, gave an elaborate review of the history and underlying purpose of the Fair Labor Standards Act. In that case, the employees had been hired by a newspaper publishing company which made with each of the employees involved a bona fide contract of employment, at a basic hourly rate of pay, providing for payment for overtime work at a rate of not less than one and one-half times such basic rate of pay, with a guaranty that the aggregate pay for regular and overtime work would amount each week to not less than a certain definite sum stated in the contract. There, the Administrator contended that instead of adopting as to each employee the regular hourly rate stipulated in his contract of employment as the overtime rate, which in all cases was more than one and one-half times the minimum rate required by the Act, there should have been adopted a rate arrived at by dividing the weekly salaries of each employee by the total number of hours worked each week. The lower Court held, and this was affirmed, that nothing in the Act was intended to, or did prevent the employer from contracting with its employees at a rate at which each employee was to be employed so long as such rate was not below the minimum fixed by the Act, and so long as each employee was paid at least one and one-half times such rate for overtime work each week.

After analyzing the words employed in the Act, the Court said (121 F.2d at page 212): "When we turn to the legislative history of the act, appellant stands no better. For, there is no reference in the whole legislative history to prohibiting agreements between employer and employee, as here, for all inclusive and regular weekly salaries, none whatever to the effect that it was intended that persons already paying more than the minimum wage the act provided, should be compelled to pay still more. The legislative history of the act, while showing as the legislative history of all new and controversial acts does some individual differences of opinion, adds up to showing, as to the overtime provisions, only what the act shows, that in broad outline the Congress intended that for overtime work, time and a half, the regular rate of pay at which each was employed, should be paid each employee. How that regular rate should be arrived at, when it was fixed above the minimum, was not, for

all that appears in the briefs of the parties, and we have not otherwise had access to the debates or committee reports, dealt with in the debates on the bill, either in the original passage of it, or in amendments offered to it, except to say that wages above the minimum must be left to bargaining between employee and employer. When all is said and done, appellant comes in his argument to this point; that the law should be construed as he contends for, because in the opinion of the administrator, the law would better serve its purpose if it were drawn that way. Appellant overlooks the fact that a legislative act in the United States is not as in some countries, a mere general outline by a party or group in power, of the purposes it wishes to accomplish, to be expanded, implemented and given effect by its administrators, in accordance with the general purposes of its proponents. A fundamental fact in American political life, has always been that in the struggle here for laws as means, to make law as liberator effective, there have always been differing opinions as to the wisdom, propriety and scope of proposed new and controversial laws, and that laws as finally enacted here, are usually the result of a compromise or at least of an adjustment of these conflicting views.

\*     \*     \*     \*     \*

"Freedom of contract, within constitutionally valid limitations, is, in the United States of America, one of the fundamental freedoms and this is particularly so in regard to labor relations. When, then, it is contended as here, that a statute has cut off or limited this freedom, a litigant, must point to something more than his opinion that it ought to be cut off or limited, must point to language clearly and validly so providing. There is no more authoritative principle in the field of labor law than that, subject of course, to valid statutes designed to prohibit substandard conditions and unfair labor practices, wages, hours, and work conditions are the proper subject of contract between employer and employee and their agreements must be, and are, given full effect in the courts.

"Here it is undisputed and found by the court, that, desiring to maintain and continue a system of fixed and regular weekly salaries in strict and full compliance with the Fair Labor Standards Act, employer and employees freely and voluntarily entered into agreements having that effect. These agreements; fixed the regular rate of pay at which each was employed, at a figure considerably above the minimum standard wage the statute fixes; provided for a weekly compensation large enough to pay at least one and one-half times that regular rate for any overtime which he might be required to work each week; and based upon experience over the years, guaranteed a weekly salary to each employee in an amount which would, in some weeks, be more, in none less than would be due them, at that rate, for the regular and the overtime hours worked in any week.

\*     \*     \*     \*     \*

"Whether Congress could constitutionally fix a minimum wage and then compel employers wishing to provide for fixed weekly salaries to pay a wage higher than the minimum so fixed, might raise a serious constitutional question. That question is not before us, for nothing in the act purports to make this requirement of an employer. Appellant does not so contend. His contention, stripped of all irrelevancies and confusions, really comes down, under the controlling law, to a contention of fact; that the testimony of the employer and its employees that they have agreed, as they testified they did, is false; that there was no agreement; that there was mere bookkeeping to give the appearance of reality to an arrangement fictitious in fact, and a fraud upon the act. But in what the fiction or the fraud consists, except that the agreement is not in accord with appellant's views as to the purpose of the act, is not made to appear. It may be that Congress could validly, and should have, written a provision into the law forbidding contracts such as those made here, but that is a question for Congress, not for the administrator or the courts. It certainly was not the question the employer and employee were confronted with when they made their agreements. That was not the question the district judge dealt with. It is not the question with which we have to deal. All the district judge was asked to and did decide, was whether the parties made the agreement they claimed to have made and whether they could in law make such an agreement. We think it perfectly clear that the finding that they could and did is supported in fact and in law, and that the judgment should be affirmed."

We are not unmindful of the fact that in the Texas decision from which we have just quoted, the contract of employment embraced a stipulation that expressly covered payment for overtime, whereas in the pres-

ent case, there was no such express stipulation. Further, we are not unmindful of the fact that on this point the Circuit Court of Appeals in the Texas case said by way of dictum (121 F.2d at page 211): "In cases where there is no express agreement as to the regular rate at which the employee is employed, but only an agreement for a weekly wage, appellant's method of arriving at the regular rate by assuming that the wage stipulated for is not intended to cover overtime worked, would, we think, be unexceptionable. But in cases where, as here, the contract of employment fixes the regular rate, that method will not do, for here within the very words of the statute, 'the regular rate at which he is employed', is fixed as to each employee in his contract of employment." However, we do not think that, on principle, there is any real distinction between the two situations. Each contract was followed in good faith in an attempt to meet the requirements of the law. In the Texas case, the Administrator sought the adoption of the same method for computing overtime wages that the plaintiff here seeks. That method was rejected in the Texas case because the parties were found to have entered into an agreement which, when given full expression as intended by the parties, satisfied the requirements, when fairly interpreted, of the Act. The same we find to be true in the present case.

It is asserted that the result of the interpretation which we here place upon the Act will lay the way open to its evasion by stressing the weekly or monthly character of work and wages or salaries paid; that it will permit employers to defeat the overtime provisions of the Act as to all employees except those whose wages are near the minimum level; that by making overtime more costly, it was intended to spread employment opportunities and thereby to enforce, in effect, a flat prohibition without causing undue hardship to enterprises not readily adaptible to a shorter hour schedule, and that such purpose cannot be accomplished if the overtime provisions of the Act are restricted to those workers who happen to be at the minimum wage level.

■ In reply to such arguments, we deem it sufficient to say, first, that each case must be decided upon its own special facts,—we are not here attempting to do more than to determine the rights of the present plaintiff with respect to his particular work period in question; and, second, that this Court will never assume that an employer is attempting to evade the Act merely because his interpretation of it is inconsistent with his employee receiving more wages, such as he might receive under some other interpretation, particularly if such other interpretation has no more substantial support than a form of administrative fiat springing from a desire on the part of the administrative tribunal to produce abstract uniformity in its rulings, regardless of whether it is entirely reasonable so to do.

■ Accepting, as we may, the proposition that generally speaking the words "the regular rate at which he is employed" as used in the Act, mean the actual hourly rate of pay of the employee computed by dividing his actual weekly wage by the number of hours *customarily* worked, there is the added reason for not applying that rule in the present case because plaintiff himself, who asserts it, as well as his employer, is unable to state the number of hours that he did work, except for a very limited period, and there was not, and could not be from the inherent character of the work *any customary* number. It might be another thing if the defendant in the present case failed to keep a record of the hours for the express purpose of evading the Act. Enough has already been said to indicate that the present defendant had no such purpose. See where the plaintiff's argument would lead us if uniformity were insisted upon without regard to peculiar facts in individual cases. Let us suppose a case where there is a regular *hourly rate of employment which is below* the minimum stipulated in the Act. Obviously, in such a case neither the employee nor the Wage and Hour Division would assert that such rate was "the regular rate" at which the employee was employed, for the purpose of determining the amount of wages for overtime. Such a case would be declared a clear exception to the rule because, by direct implication, there can be no "regular rate" which does not meet the minimum requirements of the Act. So the result is reached by applying a rule of reason to words in their application to a particular case in order to produce a sensible result, which is just what this Court has attempted to do in the present instance.

Contrary decisions appear to have been reached in Fleming v. Carleton Screw Products Co., 37 F.Supp. 754, a decision of

184

the District Court for the District of Minnesota, Fourth Division, and in St. John v. Brown, 38 F.Supp. 385, a decision of the District Court for the Northern District of Texas. The basis, however, of the decision in the first case was that the contested "agreed rate" was found to be merely a device for evading the provisions of the Act, and was not the rate at which the employee was actually employed. The second case involved the wages of ordinary oil field workers; and while general statements occur in the opinion indicating, prima facie, that the conclusion is contra to that here reached, a careful examination of the opinion discloses that, unlike the situation in the A. H. Belo Corporation case, supra, and here, the plaintiff was not at all times being paid as much or more than the minimum statutory rate when applied to both regular and overtime hours.

Finally, and to summarize: We find that the defendant has met the requirements of the Act in this particular case, when fairly interpreted, and that it would be inequitable to permit the plaintiff, through a strained construction of the Act, to recover, retroactively for two years, wages more than 100% in excess of what he voluntarily agreed to accept, and did accept during that period, not to speak of an additional 100% in penalties which he claims.

In view of our conclusion, it becomes unnecessary to consider any of the other points asserted by the defendant by way of defense. For the reasons given, judgment is entered for the defendant, costs to be paid by the plaintiff.