## BUMPUS v. CONTINENTAL BAKING CO.
### No. 9017.

Circuit Court of Appeals, Sixth Circuit.

Dec. 10, 1941.

W. G. Cavett, of Memphis, Tenn., for appellant.

A. L. Heiskell, of Memphis, Tenn. (Shepherd, Owen & Heiskell, of Memphis, Tenn., on the brief), for appellee.

George B. Searls, of Washington, D. C. (Warner W. Gardner and Irving J. Levy, both of Washington, D. C., Charles H. Livengood, Jr., of Nashville, Tenn., and George B. Searls and Joseph D. Hyman, both of Washington, D. C., on the brief), for Administrator of Wage and Hour Division, U. S. Department of Labor, amicus curiae.

Before ALLEN, HAMILTON, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

Pursuant to § 16 of the Fair Labor Standards Act of 1938, Title 29 U.S.C. § 201 et seq., 29 U.S.C.A. § 201 et seq., appellant, who was formerly employed by appellee in its wholesale baking establishment at Memphis, Tennessee, sought to recover unpaid compensation, an equal amount as liquidated damages, and a reasonable attorney's fee. Title 29 U.S.C. § 216(b), 29 U.S.C.A. § 216(b).

The District Court, sitting without a jury, found that the appellant was engaged in commerce or in the production of goods in commerce and entitled to the benefits of the Act. This holding is not challenged here. The District Court dismissed the petition, relying upon the principles announced in Reeves v. Howard County Refining Co., D.C., 33 F.Supp. 90, and A. H. Belo Corp. v. Street, D.C., 36 F.Supp. 907, and denied recovery upon the ground that appellant's compensation equaled or exceeded the requirements of the Act. The Belo case, which was affirmed by the Circuit Court of Appeals for the Fifth Circuit in Fleming v. A. H. Belo Corp., 121 F.2d 207, certiorari granted October 27, 1941, 62 S.Ct. 137, 86 L. Ed. ——, held in substance that § 7 of the Act merely prescribed a fixed minimum rate at which hours in excess of the statutory maximum must be compensated, and that any contract between employer and employee which provided for compensation for overtime hours in excess of that minimum was not affected by § 7, holding that the overtime provisions of the Act are not inserted to limit overtime work, but as a part of the plan to raise sub-standard wages.

The pertinent portions of Sections 6 and 7 of the Act read as follows:

"Minimum Wages"

"Sec. 6 [§ 206.] (a). Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—

"(1) during the first year from the effective date of this section, not less than 25 cents an hour,

"(2) during the next six years from such date, not less than 30 cents an hour,

"(3) after the expiration of seven years from such date, not less than 40 cents an hour, or the rate (not less than 30 cents an hour) prescribed in the applicable order of the Administrator issued under section 8 [208], whichever is lower, and

"(4) at any time after the effective date of this section, not less than the rate (not in excess of 40 cents an hour) prescribed in the applicable order of the Administrator issued under section 8 [208]."

"Maximum Hours"

"Sec. 7 [§ 207.] (a). No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

"(2) for a workweek longer than forty-two hours during the second year from such date, or

"(3) for a workweek longer than forty hours after the expiration of the second year from such date,

"unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Concededly appellant was employed by the appellee during the period covered by the complaint at a rate considerably in excess of the minimum wages set by § 6 of the Act, and in excess of such wages plus overtime payments based on the minimum wage. The principal question presented, therefore, is whether § 6 so limits and controls § 7 that an employee whose compensation equals or exceeds the applicable minimum rate for each of the applicable maximum hours permissible without increased compensation, and in addition exceeds one and one-half times the minimum rate for each hour over that maximum number, is not entitled to additional compensation for overtime under § 7. The correlative question is whether the words "regular rate at which he is employed" mean the minimum rate prescribed by § 6. If the sole purpose of § 7 is to eliminate sub-standard wages, and if it is controlled by § 6, the judgment was correct. If, however, the purpose of § 7 is to regulate hours of labor and to eliminate excessive hours by requiring the employer to pay time and a half for overtime at the regular rate paid the employee even though he is paid more than the minimum set in § 6, then the judgment was erroneous.

We think that the judgment of the District Court must be reversed. The wording of § 7 is unqualified and forbids employment of "any * * * employees * * * engaged in commerce or in the production of goods for commerce" longer than a specified workweek unless such employee receives compensation for his employment in excess of the hours specified at a rate not less than one and one-half times the regular rate at which he is employed. Title 29 U.S.C. § 207, 29 U.S.C.A. § 207. The words "minimum wage" or "minimum rate" are not found in § 7. The unmistakable meaning of the language used is that employment for more than the statutory maximum number of hours is intended to entail additional expense to the employer no matter what the regular rate of employment may be unless the employee falls within one of the exempted groups there listed. The appellant here does not fall within any of the exempted classifications. The interpretation adopted by the District Court would make § 7 effective only when the regular rate was at or near the minimum, and deprive it of its clearly intended force as a regulation of hours. We cannot interpret this legislation in such a "spirit of mutilating narrowness." United States v. Hutcheson, 312 U.S. 219, 235, 61 S.Ct. 463, 467, 85 L.Ed. 788.

The express purpose of the statute is to eliminate as rapidly as practicable in industries engaged in commerce or in the production of goods for commerce, "labor conditions" detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers. Title 29 U.S.C. § 202. Labor conditions clearly comprehend both wages and hours. The

maintenance of the "minimum standard of living" necessary for health, efficiency and general well-being of workers embraces both the problem of eliminating starvation wages and the problem of cutting down excessive hours of labor. The text of the Act as a whole indicates that the detrimental labor conditions to which it is directed include long hours as well as low wages.

Also the conclusion of the District Court is squarely counter to the purpose of the Act as shown by its legislative history and background. Without detailed discussion of the statements upon this subject found in the President's message urging the legislation, the various committee hearings and reports, and the discussion on the floor of both houses of the Congress, it suffices to say that these statements strongly support the construction that § 7 of the statute is not merely a part of a statutory plan to raise sub-standard wages. Typical of these statements is that of the Senate Committee on Education and Labor, reporting the original bill with amendments, to the effect that "The committee believes that a start should be made at the present session of the Congress to protect this Nation from the evils and dangers resulting * * * from long hours of work injurious to health. This law proposes to accomplish this purpose * * *." Senate Report 884, 75th Congress, 1st Session, July 6, 1937, p. 4. It is true that § 7 imposes a statutory higher rate than the regular rate for overtime hours. The legislative history, however, demonstrates that § 7 has independent vitality in its prohibition of excessive hours and that the imposition on the employer of the increased expense for overtime is intended to discourage the imposition of excessive hours of labor upon the employees. The interpretation of these legislative proceedings is significant. United States v. Dickerson, 310 U.S. 554, 562, 60 S.Ct. 1034, 84 L.Ed. 1356; United States v. Darby, 312 U.S. 100, 112, 61 S.Ct. 451, 85 L. Ed. 609, 132 A.L.R. 1430. The official pronouncement of the Administrator shortly after the effective date of the Act is to the same effect. Interpretative Bulletin No. 4. The contemporaneous construction of those charged with the administration of the provisions of a new law is entitled to great respect, Edwards' Lessee v. Darby, 12 Wheat. 206, 210, 6 L.Ed. 603, and has bearing here.

■ We conclude that the appellant is entitled to receive overtime payments based on the regular rate at which he was employed regardless of the fact that the contract entitled him to substantially more than the minimum wages set by § 6. This conclusion is in accord with the great weight of authority upon this question. Floyd v. Du Bois Soap Co., Ohio App., 38 N.E.2d 919; St. John v. Brown, D.C.N.D. Tex. 38 F.Supp. 385; Williams v. General Mills, D.C.N.D. Ohio, 39 F.Supp. 849; Emerson v. Mary Lincoln Candies, 174 Misc. 353, 20 N.Y.S.2d 570, affirmed, 261 App. Div. 879, 26 N.Y.S.2d 489; Thornberg v. Eastern T. & W. N. C. Motor Transportation Co., Tenn.Sup., 157 S.W.2d 823; Sunshine Mining Co. v. Carver, D.C. Idaho, 41 F.Supp. 60. Contra: Missel v. Overnight Transportation Co., D.C.Md., 40 F. Supp. 174.

These decisions run counter to the holding in the Belo case. That case, however, is distinguishable on its facts, as is clear from the following quotation, taken from 121 F.2d page 211:

"In cases where there is no express agreement as to the regular rate at which the employee is employed, but only an agreement for a weekly wage, appellant's method of arriving at the regular rate by assuming that the wage stipulated for is not intended to cover overtime worked, would, we think, be unexceptionable."

It was so distinguished in Klotz v. Ippolito, D.C.S.D. Tex., 40 F.Supp. 422. Cf. Super-Cold Southwest Company v. McBride, 5 Cir., 124 F.2d 90, decided December 1, 1941. Insofar as the Belo case concludes that the overtime provisions are not inserted in the statute to discourage or limit overtime work, we are unable to agree with it.

■ Appellee argues that since a contract must be construed to preserve its legality the rate of pay provided for in the contract was modified by the Act. As we understand this contention it is that by virtue of the Act and appellant's acceptance of wages after the effective date of § 7 thereof, appellant's hourly rate became 50 cents for the first 44 hours; and that when the statutory maximum of 42 hours became effective on October 24, 1939, the rate became 49.02 cents for the first 42 hours. It is said that such rates are the "regular rates" at which appellant was employed and on which "time and a half"

is to be computed. Since § 18 provides that no provision of the Act "shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage," we cannot presume that the wage was reduced when all the evidence presented points to the conclusion that no change was made in the regular rate at which appellant was employed.

Indeed, this contention is completely answered by the actual facts with reference to the rate at which the appellant was paid under the contract, and the construction of the contract made by the parties even before the Act was passed. Appellant began working for appellee on January 28, 1938, on the basis of $25.00 per week for a 48-hour week, that is, at 52 and a fraction cents per hour. He was paid at the end of each week. In the belief that appellant was not subject to the Act, which was approved on June 25, 1938, appellee suggested no change in his hours or rate of pay to conform thereto. If appellant worked less than 48 hours in any week he was paid at the same rate, 1/48 part of $25.00, or 52 and a fraction cents per hour. In addition he was paid time and one-third for all time over 48 hours in any week for the first part of the period under consideration; and beginning with the week ending April 20, 1940, time and one-half for such overtime. This additional compensation for time beyond 48 hours a week was also computed on the basis of an hourly rate of 52 and a fraction cents.

There remains to be considered an apparent disagreement as to the method of calculating the amount of recovery for unpaid compensation under the construction of the statute which we adopt, considering 52 and a fraction cents per hour as the regular rate at which appellant was employed. Appellant is entitled to recover overtime compensation from the appellee for every week of his employment subsequent to October 24, 1938, except the weeks in which he worked a number of hours less than the applicable statutory maximum. For each overtime hour for which appellant received his regular rate he is entitled only to additional half-time pay. Hours for which he was paid time and one-third are not fully paid, and appellant is entitled to recover for those hours the difference between time and one-half and the amount already paid. Deduction of the amounts al-ready paid must be made before any calculation of the statutory "additional equal amount as liquidated damages" is made.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.