GREEN HEAD BIT & SUPPLY CO. v. HENDRICKS et al. (WALLING, Adm'r of Wage and Hour Division, Dept. of Labor, Intervener).

No. 938 Civil.

District Court, W. D. Oklahoma.

March 1, 1943.

Malcolm W. McKenzie, of Everest, McKenzie & Gibbens, of Oklahoma City, for plaintiff.

Llewellyn B. Duke, Regional Atty. and Harry Campbell, Jr., both of the Wage and Hour Division, of Dallas, Tex., for intervener.

No appearance for defendants.

VAUGHT, District Judge.

The complainant commenced this action against John W. Hendricks et al., defendants, praying for a declaratory judgment under Title 28 U.S.C.A. § 400 and Title 29 U.S.C.A. § 201 et seq.

The complainant, a private corporation organized under the laws of Oklahoma, was engaged in the manufacture, sale and repair of equipment used in the operation of oil and gas wells and was engaged in commerce and in the production of goods for commerce within the meaning of the Fair Labor Standards Act.

It is alleged that the defendant John W. Hendricks and other defendants named in the complaint were employed by the complainant as welders and helpers, and that one of the defendants, C. A. Matthews, was employed as bookkeeper and clerk.

All of the defendants, with the exception of six, were served but failed to answer or defend in any manner against the complaint: Said defendants being in default, Thomas W. Holland, then Administrator of the Wage and Hour Division, filed a motion for leave to intervene and offered an intervention as claims and defenses of the administrator. Thereafter, the administrator was granted leave to intervene and filed his pleading, limiting the right of the administrator to introduce evidence and argue the issues but not extending the issues to calculating amounts due to individual employees, as distinguished from general issues of claims and proper computation of overtime under said act. Prior to the trial of the case, L. Metcalfe Walling was substituted as intervener for the said Holland, whom he had succeeded as administrator. On this record the cause went to trial.

The record discloses that there are three classes of employees: The bookkeeper and clerk, Matthews; the helpers, Hendricks and others; and the welders, Lindley and others. Prior to the effective date of the Fair Labor Standards Act, October 24, 1938, the bookkeeper was paid a salary of $135 per month; the helpers were paid on a basis of 40¢ an hour; and the welders, on a basis of 90¢ an hour. Immediately prior to the effective date of said act, the complainant, through its managing officer, advised the defendants that the business could not be operated and pay greatly increased wages, but that it would guarantee to pay the welders on the basis of $1 an hour for the entire time worked including overtime and to pay the helpers 50¢ an hour for all time worked including overtime, and that it would increase the bookkeeper's salary to $150 per month. The manager explained to the defendants that he was anxious that they retain their positions with the complainant and that each week they would determine the regular rate, dependent upon the number of hours worked and pay them time and one-half for overtime on the basis of this rate, but that the regular rate of employment might vary from week to week in accordance with the number of hours worked. This arrangement was accepted by the employees.

One of the exhibits, which will be considered as a typical example of the record for each employee in the helper class, is the time card for the defendant Hendricks for the week commencing February 16, 1941, the first week worked under the agreed plan, which showed the total time worked as 76½ hours, with 40 hours credited as regular time and 36½ hours credited as overtime. The rates applied were 41¢ for the regular rate for the 40 hours worked, amounting to $16.40, and 61½¢ for overtime for the 36½ hours, amounting to $22.45, making a total of $38.85 for that week's work, which is substantially the same as 50¢ an hour for 76½ hours, the guaranteed compensation.

Another exhibit, which will explain the plan for the welder class, is defendant Lindley's record for the week commencing March 2, 1941, the first week worked under the agreement guaranteeing $1 per hour, which showed the total time worked as 60 hours, with the rates applied as 86¢ an hour for the 40 hours regular time, and $1.29 an hour for the 20 hours overtime, making the total amount of compensation actually paid of $60.20.

These two exhibits illustrate the plan. This plan was entirely agreeable to all the employees. A number of the employees testified as witnesses for the intervener, yet each stated that he thoroughly understood the contract of employment; that it was satisfactory to him at the time of his employment and was satisfactory to him then; that he had never made any complaint; and that he was not seeking additional compensation.

The bookkeeper testified that he had never worked more than an average of 40 hours per week had never made any complaint, and that the arrangement was entirely satisfactory to him at the time it was made and was satisfactory now.

The complainant alleges that this contract and agreement between it and the various employees was made for the purpose of complying strictly with the Fair Labor Standards Act and of guaranteeing to the employees a minimum wage for each hour worked; that the manner in which the regular rate was determined for each week was thoroughly understood by them; and that their checks each week contained the regular rate, the regular hours of employment and the overtime.

It further appears from the record that a former employee, who was discharged after a short time for some reason and who, therefore, was unfriendly to the complainant, wrote a letter or gave information to the intervener as to the plan then in operation at the complainant's plant. Whereupon the intervener, on his own motion, notified the complainant that the plan under operation did not comply with the Fair Labor Standards Act and it would be necessary for it to compensate its employees on the regular rate of $1 per hour for welders and 50¢ per hour for helpers.

It was because of this notice and the demand made upon the complainant by the intervener that this complaint was filed seeking a declaratory judgment interpreting the act as applied to the contracts and agreements hereinbefore set out.

This case presents an unusual situation. The employer and the employees were entirely satisfied. No complaint had been made by any of said employees and no claim for additional compensation for overtime under the theory of the intervener was made, and for that reason they did not plead or defend in this case. The only party who was dissatisfied with this arrangement was the intervener.

■ It is admitted that the regular rate adopted by the employer and the employees each week was in excess of the minimum rate fixed by the act. The purpose of this act was to protect the employees against extremely low wages and sudden changes in wages, and at the same time to protect the employer under a plan which would justify him in expecting continuous service and the benefit of experienced and satisfied employees.

The leading case construing contracts of this chacater is Walling v. A. H. Belo Corporation, 316 U.S. 624, 630, 634, 62 S. Ct. 1223, 1226, 86 L.Ed. 1716, decided June 8, 1942, which is now familiar to all the courts. In that case the court said:

"It is no doubt true, as petitioner contends, that the purpose of respondent's arrangement with its employees was to permit as far as possible the payment of the same total weekly wage after the Act as before. But nothing in the Act bars an employer from contracting with his employees to pay them the same wages that they received previously, so long as the new rate equals or exceeds the minimum required by the Act.

\* \* \* \* \* \* \* \*

"The problem presented by this case is difficult—difficult because we are asked to provide a rigid definition of 'regular rate' when Congress has failed to provide one. Presumably Congress refrained from attempting such a definition because the employment relationships to which the Act would apply were so various and unpredictable. And that which it was unwise for Congress to do, this Court should not do. *When employer and employees have agreed upon an arrangement which has proven mutually satisfactory, we should not upset it and approve an inflexible and artificial interpretation of the Act which finds no support in its text and which as a practical matter eliminates the possibility of steady*

*income to employees with irregular hours.* Where the question is as close as this one, it is well to follow the Congressional lead and to afford the fullest possible scope to agreements among the individuals who are actually affected. This policy is based upon a common sense recognition of the special problems confronting employer and employee in businesses where the work hours fluctuate from week to week and from day to day. Many such employees value the security of a regular weekly income. They want to operate on a family budget, to make commitments for payments on homes and automobiles and insurance. Congress has said nothing to prevent this desirable objective. This Court should not." (Emphasis supplied.)

Also, our highest court, in Overnight Motor Transp. Company v. Missel, 316 U.S. 572, 579, 62 S.Ct. 1216, 1221, 86 L.Ed 1682, decided the same date as the Belo case, supra, said:

"Neither the wage, the hour nor the overtime provisions of sections 6 and 7 [29 U.S.C.A. §§ 206, 207] on their passage spoke specifically of any other method of paying wages except by hourly rate. But we have no doubt that pay by the week, to be reduced by some method of computation to hourly rates, was also covered by the act. It is likewise abundantly clear from the words of section 7 that the unit of time under that section within which to distinguish regular from overtime is the week. * * *

"No problem is presented in assimilating the computation of overtime for employees under contract for a fixed weekly wage for regular contract hours which are the actual hours worked, to similar computations for employees on hourly rates. Where the employment contract is for a weekly wage with variable or fluctuating hours the same method of computation produces the regular rate for each week. *As that rate is on an hourly basis, it is regular in the statutory sense inasmuch as the rate per hour does not vary for the entire week, though week by week the regular rate varies with the number of hours worked.* It is true that the longer the hours the less the rate and the pay per hour. This is not an argument, however, against this method of determining the regular rate of employment for the week in question. Apart from the Act if there is a fixed weekly wage regardless of the length of the workweek, the longer the hours the less are the earnings per hour. This method of computation has been approved by each circuit court of appeals which has considered such problems. See Warren-Bradshaw Drilling Co. v. Hall, 5 Cir., 124 F.2d 42, 44; Bumpus v. Continental Baking Co., 6 Cir., 124 F.2d 549, 552 [140 A.L. R. 1258], cf. Carleton Screw Products Co. v. Fleming, 8 Cir., 126 F.2d 537, 541. It is this quotient which is the 'regular rate at which an employee is employed' under contracts of the types described and applied in this paragraph for fixed weekly compensation for hours, certain or variable." (Emphasis supplied.)

In General Mills, Inc., v. Williams et al., 132 F.2d 367, decided December 16, 1942, the Sixth Circuit Court of Appeals, in effect, held that a contract whereby hourly wage of employees was reduced from 60¢ to 52½¢, their workweek of 56 hours was continued, and they were paid one and one-half times the reduced wage for overtime work, is valid under overtime compensation provisions of section 7 of the act although under the contract the employees earned the same weekly wage they had earned prior to enactment of the act. This opinion reviewed the decision of the Supreme Court in the Belo case, supra, quoting from it, and made the holding in that case the basis of its opinion.

In White v. Witwer Grocer Company, 132 F.2d 108, 109, decided December 11, 1942, the Eighth Circuit Court of Appeals passed upon the same question and in substance held:

"The wages paid by the employer in the instant case as disclosed by the undisputed facts did not violate any provision of the Act, either as to minimum wages or overtime. The Act, however, does not define the term 'regular rate'. Its meaning is the subject of judicial interpretation, having in mind the purpose of the Act. Walling, Administrator, v. [A. H.] Belo Corp., 316 U. S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716. The Act was manifestly intended to place a floor under wages and a ceiling over hours of employment.

"The limitation in hours had apparently two purposes, the spreading of work and extra compensation for overtime. Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682. The 'freezing' of wages at a minimum level as of any particular date would not effectuate the purpose of the Act. Congress has not indicated that such was its intention.

In the absence of a declaration to that effect a Court would not be justified in indulging in speculation.

"* * * That the effect of this new employment and wage scale was to permit the employees to continue to work their sixty-hour week and earn a weekly compensation exactly the same as they had theretofore earned, and the Court concluded as a matter of law 'that the agreement entered into by the defendant and its employees a few days prior to the effective date of the Fair Labor Standards Act was lawful under said Act and not a violation of Sec. 6 of said Act.'

*  *  *  *  *  *  *  *

"The wages paid by defendant after October 22, 1938, though less than the hourly rate previously paid, were in excess of the minimum provided by Section 6 of the Act, and for the hours worked overtime in excess of 44 hours a week the employees were paid time and one-half on the basis of the reduced wages. This, we think, was not violative of Section 7 of the Act. In Williams v. Jacksonville Terminal Co., 315 U. S. 386, 62 S.Ct. 659, 672, 86 L.Ed. 914, the Court in referring to this Act said: 'It required that workers in these industries receive a compensation at least as great as that fixed by the Act. Except for that requirement the employer was left free, in so far as the Act was concerned, to work out the compensation problem in his own way.' "

In this opinion the court quoted extensively from the Belo and Missel cases, supra, and other decisions of the Supreme Court.

In Atlantic Company v. Walling, 131 F. 2d 518, 522, the Fifth Circuit Court of Appeals said: "The administrator's position seems to be not that the agreements were not made but that the appellant ought not to have required its employees to make them as a condition to remaining in its employ. Whatever may be the correctness of this view from the standpoint of general behavior, we have nothing to do with it here. It is sufficient to say that nothing in the law requires employers to continue to employ, or employees to continue to work, except on terms mutually agreeable to both, and that subject only to compliance with the act, employer and employees were free to make any terms they chose to. The judgment was right. It is affirmed throughout."

In Patsy Oil & Gas Company v. Roberts, 132 F.2d 826, 827, in an opinion rendered January 6, 1943, the Tenth Circuit Court of Appeals said: "It may be conceded that the hours worked in excess of the statutory maximum are to be considered as overtime hours, and that the employer intended to compensate the employee therefor at the rate of time and one-half the regular rate. But in the absence of a specific agreement, the regular rate is not the statutory minimum for the purpose of computing overtime compensation. There is no such agreement here and the statute will not supply it. In these circumstances, the regular rate is the wages divided by the hours worked, whether certain or variable. See Overnight Motor Transportation Company v. Missel, supra; Cf. Walling v. [A. H.] Belo Corporation, supra."

There was no contradictory evidence offered in this case, and in fact, there is no controversy over the facts as they actually exist and we are forced to certain definite conclusions.

1. That a contract or agreement was entered into between employer and employees that they would be guaranteed minimum wages for the hours actually worked.

2. In order to comply with the Fair Labor Standards Act the regular rate of pay would be fixed at a sum which multiplied by 40 hours plus one and one-half times said regular rate for all hours in excess of 40 hours would amount to the guaranteed rate.

3. The fixing of a regular rate by reducing the rate at which the employees had been employed previously was not only thoroughly understood by all of the employees but was agreed to by them and was satisfactory to them.

4. No one of the employees has sought or is seeking any additional compensation other than that provided for in the agreement and contract with the employer.

It is admitted by the complainant that the bookkeeper-clerk is covered by the Act but there is no contention on his part that he worked more than 40 hours per week and he is making no claim for additional compensation.

■ Where an employer and the employees have agreed upon a reasonable regular rate in excess of the minimum rate fixed by statute and where the employ-

ees are making no claim to any additional compensation, this court is at a loss to understand the necessity, or the reason, for the intervention in this case.

It is, therefore, the conclusion of this court that the contract as made and carried out by the employer and the employees is not violative of the Fair Labor Standards Act or any section thereof and that the complainant is entitled to a declaratory judgment to that effect.

Findings of fact, conclusions of law and a form of judgment, consistent with this opinion, may be submitted within ten days.