## SUNSHINE MINING CO. v. CARVER, U. S. Dist. Atty., et al.

No. 1444.

District Court, D. Idaho, N. D.

Aug. 27, 1941.

Joseph C. Cheney, of Yakima, Wash., and H. J. Hull, of Wallace, Idaho, for plaintiff.

E. H. Casterlin and Paul S. Boyd, both of Boise, Idaho, for defendant John A. Carver.

R. Max Etter, of Spokane, Wash., for defendants C I O et al.

Dorothy M. Williams and Irving Schoenfeld, both of San Francisco, Cal., for Wage and Hour Division, Department of Labor.

CAVANAH, District Judge.

This suit involves the application and interpretation of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., as to the operations of the plaintiff, a mining corporation organized under the laws of the State of Washington, and engaged in extracting ore from its mining property in the State of Idaho, and is for judgment under the Federal Declaratory Judgment Act, 28 U.S.C.A. § 400.

The request for relief is: (a) That it and its employees are not engaged in commerce, or in the production of goods for commerce, to bring its operations under the provisions of the Fair Labor Standards Act, or, if the Act is declared to be applicable to it and its employees, it is unconstitutional. (b) That the time spent in traveling to and from the employees' usual "working place" and the lunch period are not to be considered "hours worked" for which compensation is due to the employees. And (c) that the requirement of sections six and seven as to overtime are satisfied by the employer "whenever the total compensation paid to his employees exceeds a sum equal to forty times the statutory minimum of thirty cents per hour, plus one and one-half times his regular wage for all hours worked in excess of forty hours in any one week".

Jurisdiction is founded on the diversity of citizenship and the eixstence of a federal question arising under the Constitution and laws of the United States, and the amount in controversy.

On the motions to dismiss, the conclusion was reached that the Fair Labor Standards Act was constitutional; that the plaintiff was subject to it, as it appeared that plaintiff and its employees were engaged in the production of goods for interstate commerce, and that the defendants were properly joined upon the facts alleged, leaving to be determined whether the facts so alleged are established by the evidence. Sunshine Mining Company v. Carver et al., D.C., 34 F.Supp. 274.

A fair analysis of the evidence discloses that the nature of plaintiff's business is that it is operating a mine in Shoshone County, Idaho, and its sole and only business and activity is extracting ore containing gold, silver, copper, lead, antimony, bismuth, zinc, arsenic and iron, which it sells to the Bunker Hill and Sullivan Mining and Concentrating Company, in conformity with a contract, and to be delivered in railroad cars at Shont. Shoshone County, Idaho, which is situated about two and a half miles north of its mine. The concentrated ore is then taken by the concentrating company to its smelter at Bradley, Shoshone County, Idaho, and there sampled and weighed to determine the amount of metal it is purchasing, and then dumped into bins with other concentrates purchased from others. It can be estimated from assays, the amount of metal received from the ore concentrates obtained from any particular company. The silver received from the concentrates purchased from plaintiff is shipped to the Government mint at San Francisco, California, and the antimony, copper, matt and speiss product which contains practically all of the copper in the ore concentrates so received from plaintiff are shipped and sold to the American Smelting and Refining Company at Tacoma, Washington.

Silver is the principal metal produced by the plaintiff and it sells, monthly, about 700,000 ounces of silver to the Bunker Hill and Sullivan Mining and Concentrating Company, and it and the Bunker Hill and Sullivan Mining and Concentrating Company knew at the time the concentrates were so purchased from the plaintiff that the metal contained therein, and nearly all of the Bunker Hill and Sullivan output are shipped outside of the state of Idaho. Thus it appears clearly from the manner of the operation of plaintiff that the plaintiff is engaged in producing goods which are, after being refined and processed by the smelter, moved in interstate commerce, and comes within the terms of the Act, which reaches both those who are engaged in interstate commerce and those engaged in production of goods for interstate commerce. National Labor Relations Board v. Fainblatt et al., 306 U.S. 601, 59 S. Ct. 668, 83 L.Ed. 1014; United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. —, 132 A.L.R. 1430; Allen v. Moe, D.C., 39 F.Supp. 5; Divine v. Levy et al., D.C., 39 F.Supp. 44; St. John v. Brown, D.C., 38 F.Supp. 385; Opp Cotton Mills, Inc., v.

Administrator of Wage and Hour Division, 5 Cir., 111 F.2d 23.

■ The fact that intrastate and interstate transactions are comingled does not restrict Congress to control and define such transaction and acts. Currin et al. v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441.

■ Approaching then the question, after it was thought that the plaintiff was subject to the Fair Labor Standards Act: Is there an actual controversy as disclosed by the evidence within the meaning of the Federal Declaratory Judgment Act?

There must, of course, exist a real and substantial controversy between the parties having adverse legal interest appropriate for judicial determination as defined by the Supreme Court in the case of Ætna Life Insurance Co. v. Haworth et al., 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000.

What, then, is the nature of the controversy, its relation and interest to the relief sought as shown by the evidence?

It will be remembered that the Fair Labor Standards Act provides for penalties to be imposed upon employers for a violation of it, and that there is a demand in the present case for the traveling time and lunch period involved in plaintiff's operation to be computed as time worked within the meaning of maximum hours provisions of the Act and the restraining of the defendants from instituting any action against plaintiff and it is urged that plaintiff and its employees are not engaged in commerce or the production of goods for commerce as defined by the Fair Labor Standards Act, and if it and its employees are so engaged within the meaning of that law, the application of the Act to it and its employees is beyond the power of congress to "regulate commerce among the several States", and deprives plaintiff of its property without due process of law, and therefore is unconstitutional and invalid, and whether there is an actual controversy.

■ The answer to the inquiry as to whether the Act is constitutional and that the employees of plaintiff are not engaged in commerce or the production of goods for commerce must be in the affirmative, and the record presents a real and substantial controversy between the parties. There appears a reasonable dispute between the parties as to what is the application and interpretation of the Act. The purpose of the Declaratory Judgment Act is to settle and afford relief for uncertainties with respect to rights. The plaintiff need only show that its position is jeopardized by the statute, and threats to enforce the statute are not necessary. United States Fidelity & Guaranty Company v. Koch et al., 3 Cir., 102 F.2d 288, 290.

■ The conduct of plaintiff's business as it claims, is outside the jurisdiction of the criminal statute but subjects it to its terms. Under such circumstances it does not have to wait indefinitely under suspension. Currin et al. v. Wallace, supra; Ætna Life Insurance Co. v. Haworth et al., supra; Wallace v. Currin et al., 4 Cir., 95 F.2d 856; Employers' Liability Assur. Corporation v. Ryan et al., 6 Cir., 109 F.2d 690; Angell et al. v. Schram, 6 Cir., 109 F.2d 380; Lehigh Coal & Navigation Co. v. Central R. R. of New Jersey, D.C., 33 F.Supp. 362; Black et al. v. Little et al., D.C., 8 F.Supp. 867.

As to whether there is a justifiable controversy between the plaintiff and defendant Carver, it will be discussed under the contention: Have the defendants been properly joined and whether the Administrator of the Wage and Hour Division is an indispensable party. This question was disposed of on the motions to dismiss, where the Court considered the statute and the facts alleged, and it is pertinent to repeat what was there said [34 F.Supp. 279]:

"It being urged by the defendants that the District Attorney for the District of Idaho has no authority under the statute to carry out a threat of prosecution. Subdivision (b) of Section 4 of the Act provides: '* * * Attorneys appointed under this section may appear for and represent the Administrator in any litigation, but all such litigation shall be subject to the direction and control of the Attorney General. * * *' And Section 11 provides that the Administrator shall bring all action under Section 17 to restrain violation thereof, and it vests in the Attorney General the same power over the attorney appointed by the Administrator that he has over the District Attorneys. The Attorney General has general charge over all litigation when the United States or any of its agencies are involved. Title 5 U.S.C.A. § 309.

"The Department of Labor Act created a Wage and Hour Division which is under the Administrator, an agency of the United States, and the duty of the District At-

torney is to prosecute all delinquents for crimes and offenses cognizable under the authority of the United States, Title 28 U.S.C.A. § 485. He has control and charge of all criminal proceedings within his District. He may proceed and prosecute under the Act without first receiving authority from the Attorney General or the Administrator. A grand jury would have the power to make an inquisitorial investigation and ascertain whether or not the Act had been violated and if a true bill is returned it would become the duty of the District Attorney to prosecute without first having to receive authority from either the Attorney General or the Administrator, and he is, no doubt, a proper party under the alleged facts.

"Referring again to Section 4 of the Act, the Administrator may at his option appoint attorneys who may represent the Administrator in 'any litigation' which he may bring under Sections 11 and 17 of the Act and all such litigation is subject to the direction and control of the Attorney General. The phrase 'litigation' in the Act refers to civil actions, and not criminal proceedings. While ordinarily an injunction would not be granted against a prosecuting officer to enforce the violation of a criminal statute, but where additional procedure is now granted under the Declaratory Judgment Act, granting to the citizen the right to raise the issue as to whether their conduct does or does not violate the criminal law, and affects his property rights, he is not required to wait indefinitely under such suspension. Where there are unexecuted threats, could not the plaintiff, engaged in business, be in a position to challenge the validity of the claim of the Wage and Hour Division of the Department of Labor and the Department of Justice, that its business is conducted not in violation of law, by assuming the initiative?

"Such a transfer of interpretation of statute, from criminal to a civil Court, should be approved where the plaintiff under this new additional remedy, the Declaratory Judgment Act, shows a substantial controversy existing. It is a too narrow view of the judicial functions and under the Declaratory Judgment Act to assert that the only method of trying the validity of the business practice here is to wait until the prosecution occurs. * * *

"The Supreme Court in the case of Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 246, 79 L.Ed. 446, said: 'The statute provides that any violation of any order of the President issued under section 9(c) (15 U.S.C.A. § 709(c) shall be punishable by fine of not to exceed $1,000 or imprisonment for not to exceed six months, or both. We think that these penalties would attach to each violation, and in this view the plaintiffs were entitled to invoke the equitable jurisdiction to restrain enforcement, if the statute and the executive orders were found to be invalid.' And also it was held in the cases of Berdie v. Kurtz, 9 Cir., 75 F.2d 898, and Darger v. Hill, 9 Cir., 76 F.2d 198, where they were based upon the possibility of innumerable prosecutions, that the Secretary of Agriculture was not an indispensable party. That possibility is present here as plaintiff is subject to repeated penalties in carrying on its business which would entitle it to invoke equitable jurisdiction to restrain the enforcement of the Act, which, if found, does not comply to it as far as including the lunch hour in the maximum hours."

It is apparent that the District Attorney may proceed and prosecute under the Act without first receiving authority from the Attorney General or the Administrator. And where additional procedure is granted under the Federal Declaratory Judgment Act granting to a citizen the right to raise the issue as to whether his conduct does or does not violate the criminal law, and affects his property rights, he is not required to wait indefinitely under suspension, but he could challenge the validity of the claim of the defendants that its business is not conducted in accordance with law, and the rule that ordinarily injunctions would not be granted against a prosecuting officer in the enforcement of criminal statutes would not apply whether there were threats made by him or not. For we are here dealing with the additional procedure under the Federal Declaratory Judgment Act, and further, he has, in his answer and brief contested many of the principal questions here involved, both of law and fact, and by doing so he is now litigating with the plaintiff in having them judicially determined.

This question was settled by the Supreme Court in the case of Currin v. Wallace, supra, on an appeal from the decree of the Circuit Court of Appeals which was sustained, D.C., 19 F.Supp. 211; 4 Cir., 95 F.2d 856, where the decree enjoined the Secretary of Agriculture and other federal officers from enforcing the provisions of an Act prohibiting anyone from offering tobacco for sale in violation of the Act,

which made it an offense. The Supreme Court on the appeal said [306 U.S. 1, 59 S.Ct. 384, 83 L.Ed. 441]: "The Circuit Court of Appeals found, and the record supports the finding, that there is an actual controversy between plaintiffs and defendants, entitling plaintiffs to invoke the Declaratory Judgment Act." The Secretary of Agriculture is not an indispensable party. Fosgate Co. et al. v. Kirkland et al., D.C., 19 F.Supp. 152.

█ It also seems clear that under the issues and evidence, the defendants Unions, and employees of the plaintiff are proper parties for they have been and now are active in taking issue with the plaintiff as to the questions asserted by it, and urge that the contentions of plaintiff are not warranted under the law and evidence, as they assert that plaintiff is violating the wage and hour law; that all employees have hours of overtime per week due them; that they should be paid for traveling time and lunch period; that the C I O Union discussed in its meeting the question of enforcement of its contention and had filed a complaint with the Wage and Hour Division, all of which are susceptible to a full and final settlement by a declaration of rights.

█ The crucial question to be considered; Does the Act and the evidence recognize the interpretation that the time spent in traveling to and from the employees' "usual working place" and the lunch period are to be considered "work hours" for which the men should be paid? The pertinent evidence relating to the operations of the plaintiff shows that the plaintiff employs 600 men, of which 70 per cent of them work underground, and 30 per cent on the surface, and that the lunch period has never been, by it, regarded as a part of its maximum hours, and working time, and on March 24, 1939, the maximum hours under the Fair Labor Standards Act were reduced from 44 hours to 42 hours per week, and knowing that on October 24, 1940, the maximum hours under the Act would be further reduced to 40 hours per week, it placed its operations on a basis of a five day week, they limited the regular work of daily wage employees to five shifts per week, of seven hours and fifty minutes each, from collar to collar of the mine, which included a thirty-five minute lunch period for underground workers and thirty minute lunch period for surface workers. This is the present schedule. A shift is seven hours and fifty minutes, and as to the underground workers, is inclusive of the period from the time the men go underground until they return back to the surface, and the travel and lunch period is included in the overall shift. When the workers arrive upon the Company's property usually they come to the "dry" which is a building provided wherein the workers on the surface, and in the mine, may, at their option, change their clothes. Those who are underground workers must report at a specified time and place where they are transported from the collar of the shaft in cages to their working face, and so returned to the surface, during the course of allocated periods of time by the plaintiff. They must arrange their time so as to arrive at the "dry" and ultimately at the collar of the shaft at times as will permit them to be prepared to enter the mine at the time the plaintiff requires for the beginning of its employment. The underground workers are lowered and hoisted by the cages at specified times as to periods, and the first lowered are the first hoisted. The places where the men have their lunches underground seem safe. The mine is under force ventilation and the blasting during lunch period does not inconvenience the men. Sometimes some of them work a portion of the lunch period and when they do they receive credit for it as they insert it on the card which they turn in to the Company. Since October, 1938, the Company has instructed its foremen to instruct the men to refrain from labor during the lunch period. All underground workers are underground the same amount of time each day as near as can be regulated, and the men nearest the surface put in more actual working time than those at the farthest extremes of the mine, and the times are variable. At lunch time the men move to a place within a short distance from the working place and have their lunch, and the surface workers have their lunch wherever they desire so they can return to work after lunch without delay. It will thus be seen that the operation of plaintiff, as related to underground employees, is an operation different than the surface operation and presents a peculiar problem, so we must approach the problem with that thought in mind and consider the wording and spirit of the Fair Labor Standards Act and treat both the employer and employee with equal consideration according to their

situation and what is fair. To do this, when in determining the question as to when it is regarded that an employee is working, one should, under the evidence, consider the physical situation and surrounding circumstances and the place where the employee is required to work, the manner and time required of him to reach the place where he is directed to actually engage in physical work from the time he enters upon the premises of the employer and returns after performing manual labor in a mine consisting of levels at considerable depth from the surface to the places of work. In this respect there are two thoughts to be considered.

First, should the time spent in travel from the portal of the mine and descending to the usual place of work and returning to the portal be included in "hours worked"? The answer under the evidence should be in the affirmative for the place designated at the portal of the mine on its premises is the place where the workmen are to appear at a specified time. The workman offers himself there at a specified time and is under the control and direction of plaintiff who agrees to designate the place of work and the manner provided by it and who created the situation necessary in operating its mine. It may be short distance or a long distance from the portal of the mine, therefore such travel time consumed from the time the workman appears at the portal of the mine and the travel time consumed to their designated place of work and the travel time consumed in returning to the portal of the mine should be considered and included in "hours worked". Employment of the workmen, under such circumstances, begins when they reach such entrance of the mine, as said by the Supreme Court in Bountiful Brick Company et al. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 222, 72 L.Ed. 507, 66 A.L.R. 1402: "the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached. Probably, as a general rule, employment may be said to begin when the employee reaches the entrance of the employer's premises where the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer". It is that which consumes time or attention.

Second, should the time consumed at the lunch period be included as time worked? The method used by plaintiff and the employees, in determining what that time is, appears to be that the underground workmen records on a card each day, the time he actually worked, and delivers it to the foreman, and should he work a part of that period he is paid as overtime for the part he did so work. The keeping of it is left to the honor of the employee and the method seems to be fair to the workmen. Before and after the adoption of the Wage and Hour law the lunch period has been set aside as non-working time and that was recognized by the Union who did not consider the lunch period as time worked, as appears by the proposed contracts they submitted to the plaintiff. They knew before entering the mine that they are granted a lunch period of a certain time in which to eat their lunch and rest while in the mine, and when in doing so they are relieved of all duties. Under such circumstances, in the absence of an agreement, between the employer and employees, that the lunch period should be work time, the conclusion is inevitable that one would not be actually working while he is eating his lunch or resting, for he is not at that time rendering any services.

Finally, what formula is to be accepted when determining what constitutes compliance with the Wage and Hour law, which provides that: Section 6. " * * * Every employer shall pay to each of his employees * * * (2) * * * not less than 30 cents an hour" And Section 7. That "no employer shall * * * employ * * * his employees * * * (3) for a workweek longer than forty hours * * * unless such employee receives compensation for his employment in excess of [forty] hours * * * at a rate not less than one and one-half times the regular rate at which he is employed". Both of these provisions relate to a minimum wage and increased wage for overtime at not less than one and one-half times the regular rate at which he is employed. The plaintiff urges that the Act is a wage statute and an employer has complied with it if the total wage paid, equals or exceeds the statutory minimum of forty hours at thirty cents an hour plus the extra hours work at one and one-half times the regular wage, and if not, the provision of the Act is unconstitutional. While on the other hand the defendants

contend that the requirement of Section 7 of the Act is not satisfied by payment of a sum only equal to the statutory minimum for the statutory work week plus time and one-half for overtime. The employer cannot establish that he has paid for overtime hours "not less than one and one-half times the regular rate" at which the employee is employed as he must pay to the employee for hours in excess of forty hours a week a sum in addition to the regular weekly compensation at shift rates. The Act states, the "regular rate". And we are confronted with the two contentions of the "statutory minimum rate" and the "regular rate". Of course, in this respect the Act relates, first, to requiring the payment of a minimum rate of thirty cents an hour for the first forty hours plus a sum equal to one and one-half times the regular rate for each hour worked in excess of forty, and, second, that for overtime hours, payment of "not less than one and one-half times the regular rate". One relates to the "minimum rate" and the other to overtime work in excess of the statutory work week. The Statute does not require the employer to pay workers more than the minimum but only says he cannot go below that. The regular rate is that rate which he establishes and agrees to pay under agreement with the employees, and when that is done, for overtime the statute simply provides for payment of one and one-half times his established regular rate. The two sections denote a different purpose, as the "regular rate" referred to in Section 7 is not equivalent to the minimum rate prescribed in Section 6. The Supreme Court in the case of United States v. Darby, supra, recognizes that Section 7 of the Act is a regulation of hours and permits overtime upon payment of the prescribed increased wage. See St. John et al. v. Brown et al., supra. The overtime should not be based upon the statutory minimum wage requirement but upon the agreed rate of employment between employer and employee, which is the regular rate meant by the statute of not less than one and one-half times such regular rate at which the employee is employed. Each employee not on a salary is paid a definite amount of money for what is commonly called a shift, and such daily rate of pay per shift depends upon the class of work the men are employed to perform, and is described to be the method of paying for the employment. Therefore the provisions of the Act when in adopting the formula here are not unconstitutional.

In view of the conclusions thus expressed, a declaratory judgment will be entered as follows:

That the forty-hour work week established by the Act refers to forty hours of labor, and the lunch period as here referred to and expressed is not to be considered as a part thereof, but the time consumed in traveling from portal to portal of the mine as here expressed is to be considered as a part of the working time.

That plaintiff the employer to comply with the Act must pay for overtime work based upon the agreed rate of employment with its employees, which is the regular rate meant by the statute of not less than one and one-half times such agreed rate of employment at which the employees are employed.

That the plaintiff and its employees are producing goods for commerce and are engaged in Interstate Commerce under the Act.

Each party to pay their own costs.

Findings and declaratory judgment in conformity with conclusions here reached to be entered.