**CARLETON SCREW PRODUCTS CO. v. FLEMING.**

No. 12123.

Circuit Court of Appeals, Eighth Circuit.
March 20, 1942.

538

Samuel J. Levy, of Minneapolis, Minn., for appellant.

Roy C. Frank, Principal Atty., United States Department of Labor, of Washington, D. C. (Warner W. Gardner, Solicitor, and Irving J. Levy, Asst. Sol., both of Washington, D. C., and Donald M. Murtha, Regional Atty., of Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

This was a suit brought by the Administrator of the Wage and Hour Division of the Department of Labor to enjoin the Carleton Screw Products Company from violating the provisions of Sections 7, 11(c), and 15(a) (1), (2), and (5) of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. It will be convenient to refer to the parties as they were designated in the trial court.

The complaint charged that since the effective date of the Fair Labor Standards Act of November 24, 1938, defendant had failed to comply with its provisions in that it had not compensated its employees at one and one-half the regular rate at which they were employed for all overtime beyond the allowable maximum specified in the Act; that it had failed to keep records as required by the regulations issued under the Act. Defendant's answer put in issue the allegations of the complaint and affirmatively alleged that it had fully complied with the requirements of the Act. The answer also challenged the constitutionality as applied to it.

The court found the issues in favor of the plaintiff and entered an injunctional decree as prayed. From the decree so entered, defendant prosecutes this appeal and seeks reversal on substantially the following grounds: (1) that the Fair Labor Standards Act does not apply to employers who are paying in excess of the minimum wages provided by Section 6 of that Act for the statutory workweek and one and one-half times that minimum for hours in excess thereof; and (2) that the regular rates of pay of defendant's employees are those shown on its pay roll records, which rates were arrived at by agreement between it and its employees, and that proper overtime compensation based on such rates had been paid for all overtime hours.

There is no dispute as to the basic facts. Defendant manufactures, sells and distributes screws, brass sleeves, bushings, roller bearings, and similar screw machine products at its plant located in Minneapolis, Minnesota. Twenty-four per cent of its products are sold outside the State of Minnesota in general competition with the industry. It employs some eighteen workmen, who at the time the Fair Labor Standards Act of 1938 was passed, were working regular workweeks of fifty to fifty-six hours at rates of pay ranging from 45¢ to 80¢ an hour. In the late sum-

mer of 1938, following the enactment of the law, officials of the defendant discussed with a representative committee of its employees the wage and hour situation. It was represented to the employees that the earnings of the company were low and that a wage adjustment of some kind would have to be made in view of the Fair Labor Standards Act. The employees were told that if time and one-half had to be paid on the then going rates of pay for hours in excess of forty-four hour per workweek, it would be necessary to run a straight forty-four hour week at the then existing wage rates but that the company desired to maintain the existing weekly earnings without reduction, and to bring about the desired result a plan was submitted which provided that the employees were to sign employment agreements setting forth agreed hourly rates of pay at 10¢ less than the employees were then receiving. The employees were further told that time and one-half based on the reduced rate would be paid for all overtime work in excess of forty-four hours, and if the total pay thus computed did not amount to as much as the employees would have received from the same number of hours, at the then prevailing hourly rate, the company would "add as a bonus or gratuity" at the end of each week such additional sum as might be necessary to guarantee to the employees the same weekly earnings they had theretofore received at the straight time hourly rate. The committee was requested to submit this plan to the employees. While some opposition and hostility developed with reference to the plan, it was finally accepted and the employees signed the employment agreements submitted by the company.

The avowed purpose of the plan was to keep within the provisions of the new wage and hour law and at the same time to maintain the employees' wages at the same level as they theretofore existed. The employees signed the agreements on the assurance that they would receive the same earnings thereafter as they had been receiving. The trial court was of the view and found that the regular rate of pay was that designated in the agreements, plus the so-called bonus or gratuity.

Under Section 7 of the Act, overtime must be compensated for at a rate not less than one and one-half times the regular rate at which the employee is actually employed. It is the contention of defendant that this provision is not applicable to it because it was paying in excess of the minimum wages provided by Section 6 of the Act. The general purpose of the Act, as expressed in Section 2, is to correct or eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." As indicated by recitals in the Act, Congress found that the existence of such conditions "(1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce."

Section 6 establishes a basic minimum wage which presumably Congress considered essential to the health, efficiency and well-being of employees engaged in interstate commerce, or in the production of goods for commerce. Section 7 provides that employees shall not be required to work longer than a specified number of hours per week "unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." This provision imposes a penalty on overtime work regardless of what the rate of compensation may be, so that overtime work will be more expensive to the employer. The Act affects both wages and hours. It does not absolutely prohibit employing workers longer than the stipulated minimum of hours, but requires extra pay for overtime, thus making overtime more costly to the employer.

Referring to Section 7 of the Act, the Supreme Court, in United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 455, 85 L.Ed. 609, 132 A.L.R. 1430, among other things, said: " * * * the maximum hours of employment for employees 'engaged in commerce or in the production of goods for commerce' without increased compensation for overtime, shall be forty-four hours a week."

The propriety of this method of regulating hours of work has the sanction

of the Supreme Court. United States v. Darby, supra; Olsen v. Nebraska, 313 U.S. 236, 61 S.Ct. 862, 85 L.Ed. 1305, 133 A.L.R. 1500. We have held that the statute is remedial and must be liberally construed to effect its purpose. Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52. To hold that the Act requires only the payment of the minimum wage specified in Section 6 for hours of work in excess of the maximum weekly hours set forth, would defeat the avowed purpose of the Act. Section 6 requires that employees engaged in the production of goods for commerce shall be paid wages during the six years next following the first year from the effective date of the Act, at rates not less than 30¢ an hour. It is observed that Section 7 does not fix a minimum wage for overtime, but requires that overtime shall be compensated for at a rate not less than one and one-half times the regular rate at which the employee is employed. The purpose of this section was recognized by the Supreme Court in United States v. Darby, supra, and Olsen v. Nebraska, supra. We think it clear that Section 7 is a regulation of hours, and that the regular rate is not the minimum rate but is the rate which the employee is actually paid.

Defendant's contention finds some support in the case of Fleming v. A. H. Belo Corporation, 5 Cir., 121 F.2d 207. It was held in that case that Section 7 merely prescribed a fixed minimum rate at which hours in excess of the statutory maximum must be compensated, and that by contract the employer and employee might provide for compensation for overtime hours in excess of that minimum without violating Section 7. By this construction, Section 6 is a limitation on Section 7. We are not persuaded that this decision correctly construes these provisions of the statute, and we think it is not sustained by the weight of authority.

This same question was recently before the Sixth Circuit Court of Appeals in Bumpus v. Continental Baking Co., 124 F.2d 549, 551. In the course of the opinion in that case the court said:

"The principal question presented, therefore, is whether § 6 so limits and controls § 7 that an employee whose compensation equals or exceeds the applicable minimum rate for each of the applicable maximum hours permissible without increased compensation, and in addition exceeds one and one-half times the minimum rate for each

hour over that maximum number, is not entitled to additional compensation for overtime under § 7. The correlative question is whether the words 'regular rate at which he is employed' mean the minimum rate prescribed by § 6. If the sole purpose of § 7 is to eliminate sub-standard wages, and if it is controlled by § 6, the judgment was correct. If, however, the purpose of § 7 is to regulate hours of labor and to eliminate excessive hours by requiring the employer to pay time and a half for overtime at the regular rate paid the employee even though he is paid more than the minimum set in § 6, then the judgment was erroneous. We think that the judgment of the District Court must be reversed. The wording of § 7 is unqualified and forbids employment of 'any * * * employees * * * engaged in commerce or in the production of goods for commerce' longer than a specified workweek unless such employee receives compensation for his employment in excess of the hours specified at a rate not less than one and one-half times the regular rate at which he is employed. Title 29 U.S.C., § 207, 29 U.S.C.A. § 207. The words 'minimum wage' or 'minimum rate' are not found in § 7. The unmistakable meaning of the language used is that employment for more than the statutory maximum number of hours is intended to entail additional expense to the employer no matter what the regular rate of employment may be unless the employee falls within one of the exempted groups there listed. * * *

"We conclude that the appellant is entitled to receive overtime payments based on the regular rate at which he was employed regardless of the fact that the contract entitled him to substantially more than the minimum wages set by § 6. This conclusion is in accord with the great weight of authority upon this question. Floyd v. Du Bois Soap Co., Ohio App., 38 N.E.2d 919; St. John v. Brown, D.C.N.D. Tex., 38 F.Supp. 385; Williams v. General Mills, D.C.N.D.Ohio, 39 F.Supp. 849; Emerson v. Mary Lincoln Candies, 174 Misc. 353, 20 N.Y.S.2d 570, affirmed, 261 App.Div. 879, 26 N.Y.S.2d 489; Thornberg v. Eastern T. & W. N. C. Motor Transportation Co., Tenn.Sup., 157 S.W.2d 823; Sunshine Mining Co. v. Carver, D.C.Idaho, 41 F.Supp. 60. Contra: Missel v. Overnight Transportation Co., D.C.Md., 40 F. Supp. 174." See, also, Missel v. Overnight Transportation Co., 4 Cir., 126 F.2d 98.

■ We conclude that the Act is not limited in its effect to employees receiving less than the minimum wage prescribed.

■ It is necessary to determine what was the regular rate of compensation. The trial court found that the regular rate was the agreed rate, plus the so-called bonus or gratuity paid at the end of each week. The purpose of this so-called bonus or gratuity was to maintain the wage rate at the same level as existed at and prior to September 1, 1938. The entire purpose of the plan was to escape paying overtime on the basis of that rate. The bonus has none of the earmarks of a bonus, but it was in fact a part of the employees' regular compensation. Neither the employer nor the employee regarded this payment as a gift or a gratuity. There was no agreement between the employer and the employees to reduce the wage rate. It is worthy of note that when the standard workweek fixed by the Act changed from forty-four to forty-two hours on October 24, 1939, and to forty hours on October 24, 1940, the amounts entered in the books of the company as "bonuses," decreased uniformly because the amount shown as overtime compensation had to be increased. The so-called bonus was paid pursuant to a contractual obligation, and it was considered as part of the regular compensation and not as a gratuity. It follows that defendant's records were not so kept as to show the correct regular rate of pay of its employees and overtime compensation based on such rates in conformity with the regulations prescribed under this Act.

■■ Defendant challenges the constitutional validity of the Act in that it is an unreasonable restraint upon the liberty of contract in violation of the Fifth Amendment; that its regulation of hours constitutes an unconstitutional usurpation of power by Congress, which can not be sustained under the Commerce Clause of the Constitution, art. 1, § 8, cl. 3, and that the exemptions in the Act are such as to deny defendant the equal protection of the law. The liberty of contract guaranteed by the Constitution is not an absolute one, but is a freedom from arbitrary restraint, rather than an immunity from reasonable regulation imposed in the interest of society. Congress may constitutionally deny the liberty of contract to the extent of forbidding or regulating every contract which is reasonably calculated to affect injuriously the public interests. It may deny the right to contract in violation of the established law. For example, a common carrier or shipper can not legally contract for the transportation of goods or property in interstate commerce at a rate other or different from that specified in the approved published tariffs of the carrier, nor can it contract for preferences or rebates. Neither may individuals in the United States enter into a legal contract for the purchase or sale of lottery tickets. The constitutional right of contract may not be invoked in support of a supposed right to make or enter into any contracts which are illegal, and Congress may constitutionally regulate the making or performance of contracts where reasonably necessary to effect the purposes for which the National Government was created, such as the regulation of interstate commerce. Highland v. Russell Car & Snow Plow Co., 279 U.S. 253, 49 S.Ct. 314, 73 L.Ed. 688; Virginian Ry. Co. v. System Federation No. 40 R.E.D., 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; Philadelphia, B. & W. R. Co. v. Schubert, 224 U.S. 603, 32 S.Ct. 589, 56 L.Ed. 911; Northern Securities Co. v. United States, 193 U.S. 197, 24 S.Ct. 436, 48 L.Ed. 679.

■ It is also urged by defendant that the Act denies it the equal protection of the law, guaranteed by the Fourteenth Amendment. The guaranty of equal protection embodied in the Fourteenth Amendment, however, is a restriction on the state governments and not upon the Government of the United States. At most the guaranty of equal protection, whether embodied in the Fourteenth or the Fifth Amendment, means that no person or class of persons shall be denied the same protection of the law which is enjoyed by other persons or other classes in like circumstances. Equal protection, however, permits classification which is reasonable and not arbitrary. The statute here assailed affords like treatment to all similarly situated, and, hence, does not deny equal protection of the law.

■ These contentions of defendant, we think, are without merit. United States v. Darby, supra; Opp Cotton Mills v. Administrator, 312 U.S. 126, 657, 61 S.Ct. 524, 85 L.Ed. 624; Florida Fruit & Produce Co. v. United States, 5 Cir., 117 F.2d 506.

The decree appealed from is therefore affirmed.