TENNESSEE COAL, IRON & R. CO. v. MUSCODA LOCAL NO. 123, ETC., et al.

SLOSS-SHEFFIELD STEEL & IRON CO. v. SLOSS RED ORE LOCAL NO. 109, ETC., et al.

REPUBLIC STEEL CORPORATION v. RAIMUND LOCAL NO. 121, ETC., et al.

No. 10278.

Circuit Court of Appeals, Fifth Circuit.

July 27, 1943.

---

For prior opinion, see 135 F.2d 320, affirming, as modified, a decision of the District Court, 40 F.Supp. 4.

Borden Burr, E. L. All, S. M. Bronaugh, and Bernard A. Monaghan, all of Birmingham, Ala., for appellants.

Crampton Harris and Ralph W. Quinn, both of Birmingham, Ala., and J. A. Lipscomb, of Bessemer, Ala., for appellees.

Irving J. Levy, Associate Solicitor, U. S. Dept. of Labor, and Bessie Margolin, Asst. Solicitor, U. S. Dept. of Labor, both of Washington, D. C., for appellee Administrator of the Wage and Hour Division.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

In the petition for a rehearing it is stated that the court's opinion in this case is far-reaching in its effect, extending to all iron-ore, limestone, and coal-mining employees in the United States, and "is of the greatest concern to millions of people and the general public". In the same petition it is argued that the facts upon which the court's conclusion was based "applied to only a few of the appellants' employees and never applied to a great many employees". Passing over the inconsistency of these statements, it is only necessary to say that if the facts on which our opinion is based apply only to a few of appellants' employees, then the law as we have declared it affects only those few, because the law arises out of the facts: Ex facto jus oritur.

The parties agreed below that, if the issue as to working time should be decided against appellants, the court should then determine whether or not the employees were entitled to recover and, if so, how much. In the absence of this agreement there was nothing to show that reference to a master for an accounting was necessary after the issue as to working time was finally adjudicated. A declaratory judgment is for the purpose of finally settling an actual controversy, and ordinarily should not be entered if it will not do so. We do not understand that appellants even now are objecting to the reference. They seem to think they have been cut off from presenting defenses to claims against them on the accounting; but in this they are in error except that

the declaratory judgment herein as to what constitutes working time will be res judicata in any controversy that may arise between the same parties. In order to remove all doubt on this subject, it is ordered that our former opinion and judgment be amended by striking out the following: "that appellants have not compensated said employees for some of said working time."

The apparent confusion in which the appellants find themselves is doubtless caused by their failure to recall the nature of the actions that they themselves originally instituted. This appeal involves three separate civil actions that were consolidated for trial in the court below and disposed of by a single judgment. All of these suits were brought under the Federal Declaratory Judgments Act, which provides that in cases of actual controversy the courts of the United States shall have power to declare the rights and other legal relations of any interested party petitioning therefor, and that such declaration shall have the force and effect of a final judgment or decree and be reviewable as such.[1]

This is a procedural statute that provides an additional remedy for use in cases of which the federal courts already have jurisdiction. It should be given a liberal construction and application.[2] A court may not arbitrarily refuse to exercise such jurisdiction in a proper case, but must decide the issue presented in accordance with the law and the evidence. The procedure is expressly provided for in number 57 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and the technicalities of equity practice do not prevail therein. The courts are limited in their jurisdiction to cases of actual controversy of a justiciable nature, thus excluding an advisory decree.[3]

In the case before us both sides joined in the petition for a judicial declaration of the rights and legal relations of the parties, and no objection was made to a consolidation of the cases for trial or to the entry of a single judgment containing such declaration. On the contrary, at a pretrial hearing it was agreed by all of the parties that the primary issue in controversy was what constituted the working time that made up the workweek of em-

[1] Judicial Code, Sec. 274d, as amended, 28 U.S.C.A. § 400; Rule 57 of Federal Rules of Civil Procedure.
[2] Mississippi Power & Light Co. v. City of Jackson, 5 Cir., 116 F.2d 924, certiorari denied 312 U.S. 698, 61 S.Ct. 741, 85 L.Ed. 1133.
[3] Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688, 699.

180

ployees within the meaning of Section 7 of the Act, 29 U.S.C.A. § 207. The contention of each side was stated, and it was agreed that, if the court decided the above issue against appellants, it would then determine whether appellees were entitled to recover and, if so, how much. The rights of all parties were reserved to present their respective claims and defenses upon an accounting. From these and other agreements in the record,[4] it appears that there is only one controverted issue before us at this time, which is what constitutes the working time of these underground oremining employees.

The objections to the majority opinion raised on the petition for rehearing may be subdivided, and stated under three heads, as follows:

(1) That the declaration is too narrow to cover all but a few of appellants' employees.

(2) That it is so restricted as to time as to include only the period extending from the date of the Act to the filing of suit.

(3) That this court erroneously declared the law as to when the working time of the employees began and ended.

■ As to the first objection, we have previously pointed out that the declaratory judgment is limited by the facts of the case. It is decisive of the exact controversy that appellants petitioned the court to determine and agreed was the primary issue to be decided. They asserted, and asked the court to say, that no part of the time spent by their underground employees in the bath house, or in going to and from the bath house, or to and from the portal, or to and from the man-loading station, or to and from their actual working places, constituted a part of the workweek under Section 7 of the Fair Labor Standards Act. We held, in substance, that no part of the time spent in going to and from the bath house, or in the bath house, or in going to and from the portal, was working time, but that the employment began at the time the employees were required to report and did report at the portal for departure underground, and ended upon their return thereto at the end of the shift, less the lunch period. If not required to report at any special time, as contended, then the compensatory employment should begin at the time of departure for the trip underground.

■ The second objection is that this court did not declare the rights and legal relations of the parties as they existed or may exist subsequent to the date suit was filed. There are no facts in the record to support a finding covering this period, and no finding thereon was made by the district court; but we were told at the hearing, and it is stated in one of the briefs, that after the filing of these suits wages were paid upon a portal-to-portal basis. We cannot enter advisory judgments upon hypothetical facts. The declaratory judgments procedure does not change the essential requisites for the exercise of judicial power. The courts are limited in their jurisdiction to cases of actual controversy of a justiciable nature.[5] We have, therefore, decided the only actual controversy over which we have jurisdiction; and the plenary effect of the judgment as res judicata is ample protection for the future.

■ The third point stressed by appellants is that a mixed question of law and fact was submitted to the district court, in answer to which it incorrectly found the facts and erroneously declared the law. On appeal both contentions may be reduced to a single question of law, which is: Was the finding of fact of the court below as to working time clearly erroneous? In reviewing the decision of the trial court we are bound by Rule 52 of the Federal Rules of Civil Procedure, which provides that: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

■ Even where there is no dispute about the facts, if different reasonable inferences may fairly be drawn from the evidence, an appellate court is forbidden to disturb the findings based on such inferences unless they are clearly erroneous. That this dispute turns upon questions of fact does not withdraw it from judicial

4 R. pp. 278–283.

5 Nashville, C. & St. L. R. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191; Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688, 699; Ætna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; Gully, Tax Collector, v. Interstate Nat. Gas Co., 5 Cir., 82 F.2d 145.

cognizance in an action for a declaratory judgment. "The legal consequences flow from the facts and it is the province of the courts to ascertain and find the facts in order to determine the legal consequences. That is everyday practice."[6] The parties saw fit to submit the issues of fact to the court, without a jury, but this does not render indistinguishable the issues of law and fact. What constituted the workweek of these employees and how many hours they were suffered or permitted to work are questions of fact.

 Upon reviewing the judgment as to the facts, an appellate court looks first to the findings of the court below, and then to the evidence in the record to ascertain whether or not those findings are clearly erroneous. The character of the controversy and the issue to be determined are the same as if this were merely an action by an employee for damages under Section 7 of the Act, viz: How many hours constituted his workweek or how long did his employer suffer or permit him to work? In its ultimate aspect this is a dispute over wages, only one element of which is in controversy: the working time, which is a factual quantity of wages just as the regular rate is a factual element of wages. These two factors multiplied together form the product that indicates the compensation.

 The statute simply says that no one shall be employed for a workweek longer than the hours stated unless the employee receives compensation for the excess hours at a rate not less than one and one-half times the regular rate. That is all the pertinent law involved in this controversy. It is the only statutory provision necessary to be construed. It must be liberally construed.[7] The language is plain; it requires no outside aid in its interpretation; it contains simple words that are in common use; and, under fundamental rules of construction, such words must be given their usual and ordinary meaning.[8] The statute itself defines the word employ to include to suffer or to permit to work. The legislative intent is clear, but it is expressed in general terms and does not extend to particular instances. The myriads of circumstances in which it would be necessary to determine working time in individual cases or classes of cases could not be covered with particularity by statute.

 The record in this case presents no substantial question of law except whether or not the finding of the district court as to working time was clearly erroneous. This depends upon whether the inference, which was the basis of the finding, was a reasonable one. As modified by us, we think it was, because the ordinary man might fairly have drawn it from the evidence. It was a deduction that the average disinterested person might naturally have made from the facts. The deduction being warranted by the facts, it was not arbitrary and not clearly erroneous. This being true, the rule above quoted is that the finding "shall not be set aside".

 These mines are located in Alabama. The contract of employment is being performed there, and the law of that state governs its performance subject to the overriding provision of the federal act that requires payment to employees of additional compensation for employment in excess of the hours specified. This controversy is over the amount of wages that should be paid; it turns upon the number of hours that the miners were employed within the meaning of the Act. There is no decision of an appellate court directly in point, though there is one from a federal district court in Idaho.[9] Workmen's compensation cases are not very helpful; they prove too much;[10] but one of them is of value not as a compensation case but as an authority to support our ruling that what is working time is a question of

[6] Ætna Life Ins. Co. v. Haworth, 300 U.S. 227, 242, 57 S.Ct. 461, 465, 81 L. Ed. 617, 108 A.L.R. 1000.

[7] Bowie v. Gonzalez, 1 Cir., 117 F.2d 11; Carleton Screw Products Co. v. Fleming, 8 Cir., 126 F.2d 537.

[8] Hamilton v. Rathbone, 175 U.S. 414, 421, 20 S.Ct. 155, 44 L.Ed. 219; Mackenzie v. Hare, 239 U.S. 299, 308, 36 S. Ct. 106, 60 L.Ed. 297, Ann.Cas.1916E, 645; Caminetti v. United States, 242 U. S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A. 1917F, 502, Ann.Cas.1917B, 1168; Louisville & N. R. Co. v. United States,

282 U.S. 740, 759, 51 S.Ct. 297, 75 L. Ed. 672.

[9] Sunshine Mining Co. v. Carver, D.C., 41 F.Supp. 60, wherein the court held that time spent by miners in travelling from portal of mine to their usual place of work and back to portal should be included in hours worked, for which they were entitled to compensation under the Fair Labor Standards Act. See, also, Sirmon v. Cron & Gracey Drilling Corp., D.C., 44 F.Supp. 29.

[10] In such cases the employee is generally protected while on or about the

fact.[11] There is a decision under the Hours of Service Act[12] wherein the Supreme Court held that members of a train crew under orders, liable to be called at any moment and not at liberty to go away, were none the less on duty when inactive. The court said: "Their duty was to stand and wait."[13]

The law in dispute in the instant case covers less than a page,[14] but the facts are contained in seven volumes of a printed record of nearly five thousand pages. The federal act does not supersede the local law in the several states except to the extent of a conflict between them. It is for this reason that we attach importance to an Alabama decision distinguishing between a finding of fact and a conclusion of law.[15] In that case the court did not discuss the distinction, but what courts do is sometimes more important than what they say; and this is what the Alabama court did: Upon an issue as to the relation between the workman and the employer, it set aside the trial court's conclusion of law as inconsistent with its finding of fact. If the status of a workman when injured on the defendant's premises is a factual condition, the same is true as to the activities of miners. In the case cited we find the Supreme Court of Alabama drawing the distinction between questions of law and fact. The same distinction exists in federal law and procedure, and there is nothing to the contrary in the Fair Labor Standards Act.

If the Alabama law governs, then why does not the agreement as to rates of pay and hours of employment prevail? The answer is this: It does except to the extent that the agreement conflicts with the paramount provisions of federal law. No agreement as to the hours worked or as to the time of employment is valid if the actual employment is longer than the time stipulated and is in excess of the hours specified in Section 7 of the Act. Whether one is working, resting, idling, playing, or preparing to work is as much a matter of fact as whether one is asleep or awake, or is laughing or crying. In Skidmore v. Swift & Co., 136 F.2d 112, this court recently held, in an action for overtime compensation under 29 U.S.C.A. § 207, that the burden was on the employees to segregate the actual hours of their employment from the time spent by them in playing, sleeping, bathing, shaving, and dressing. So we say the Act does not define these instances; their peculiar character must be determined by evidence. Two people may be in swimming, an instructor and his pupil; one will be working and the other playing. The working time of every miner is a definite controlling fact that can and must be finally determined in order to fix the amount of wages due him under the federal statute. It is a fact that cannot be

---

premises of his employer. In Jett v. Turner, 215 Ala. 352, 110 So. 702, at p. 704, the Supreme Court of Alabama said: "While the employee is being transported by the employer pursuant to the contract of employment, it cannot be questioned they have entered upon the day's work wherein mutual duties of employer and employee are presently being performed. The pay of the employee has begun, not in wages, but in service * * * ."

See, also, Overton v. Belcher, 232 Ala. 396, 168 So. 442; Moss v. Hamilton, 234 Ala. 181, 174 So. 622.

Moss Tie Co. v. Tanner, 44 F.2d 928, was a case, from the 5th Circuit under the Longshoremen and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., holding that an employee is generally in the course of employment while going to or from place of work by only practical route.

In Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 222, 72 L.Ed. 507, 66 A.L.R. 1402, under the Workmen's Compensation Act of Utah, the United States Supreme Court said that the employment may begin in point of time before the work is entered upon and, probably as a general rule, may be said to begin "when the employee reaches the entrance to the employer's premises where the work is to be done."

[11] Overton v. Belcher, 232 Ala. 396, 168 So. 442.

[12] Act of March 4, 1907, c. 2939, 34 Stat. 1415, 45 U.S.C.A. § 61 et seq.

[13] Missouri, K. & T. R. Co. v. United States, 231 U.S. 112, 119, 34 S.Ct. 26, 27, 58 L.Ed. 144.

[14] No employer shall employ any of his employees for a workweek longer than 44, 42, or 40 hours, respectively, "unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." Sec. 7(a) of Act of June 25, 1938, c. 676, 52 Stat. 1063, 29 U.S.C.A. § 207.

[15] Overton v. Belcher, 232 Ala. 396, 168 So. 442.

found in any statute or decision or law book (except statutes not applicable in this case), but must be determined by the court or jury in any justiciable controversy wherein a real issue arises with respect thereto.[16]

In a supplemental brief, one of the appellants says that the effect of our decision, the plain and definite holding of the majority, is that as a matter of law the time consumed in traveling from the portal of the mine to the face and in returning therefrom to the portal "must be included in the working time that makes up the workweek of every ore-mining employee within the meaning of Section 7 of the Fair Labor Standards Act". We did not so hold, and such should not be the effect of our decision.

▇▇▇ We have written in vain if our opinion is to be interpreted as providing a rigid definition of working time, or as upholding the portal-to-portal theory as a matter of law, or as denying the principle that in close cases it is well to afford the fullest possible scope to agreements among the individuals who are actually affected.

The evidentiary value of such agreements in relation to working time is for the jury or other fact-finding tribunal.[17] We have expounded no rigid definition of working time. The Act fails to provide one, and we should not do what was deemed unwise to do by legislation. The Congress probably failed to define working time for the same reason that it refrained from attempting to define the regular rate of pay, namely, "because the employment relationships to which the Act would apply were so various and unpredictable".[18]

Appellants sought by declaratory judgment to obtain a rigid definition of working time favorable to them. They now chide us for laying down such a definition against them. We did not do either; we merely refused, because not clearly erroneous, to set aside a finding supported by evidence as to what constituted working time of employees in the particular circumstances. The Act of Congress in this respect differs from the legislation of those mining states that limit work-time in underground mines to eight hours per day, and that include in this reckoning all time spent underground.[19]

---

[16] The court below found the following: The employees were required to report at the beginning of a shift in time to catch the vehicle on one of its trips underground. After reporting at the mouth of the mine the men were daily subject to instructions by the company, and frequently were given their first instructions of the day prior to entering the slope. They were forbidden to enter the mines until their brass checks had been deposited at the tally house. At this point vacancies in working crews were ordered filled by company officials; the head miner or crew foreman began to assemble his crew and to issue orders to its members. When the miners reported at the mouth they were in their working clothes and had their indispensable lamps. The loading of the men into the vehicle in which they were to be transported, as well as the speed and schedule of the vehicle, were under the control and supervision of appellants. They required the men to ride rather than to walk, and required certain ones to ride on particular trips. The miners, being under the disciplinary rules of the company and the supervision of its officials, were subject to conditions peculiar to their occupation from the time they entered the portal until their exit therefrom.

[17] Agreements as to working time or the rate of pay are not conclusive if the parties do not act in conformity to the agreements. The court below found that during approximately sixty years of iron-ore mining in the Birmingham district red-ore miners had been paid without regard to the number of hours spent daily at the face or at any specified place or station; and that there had never been any custom under which the miners were paid solely for time actually spent at their particular stations underground.

[18] Walling v. A. H. Belo Corporation, 316 U.S. 624, 634, 62 S.Ct. 1223, 1229, 86 L.Ed. 1716, 1723.

[19] Arizona Laws of 1912, c. 28, Secs. 2 & 3, p. 59; Arizona Code Ann. (1939), Vol. 4, Secs. 56-115; Utah Laws of 1937, c. 59, amending Rev.Stat. (1933), Secs. 49—3—2. Cf. Nevada Comp.Laws (1929), Vol. 5, Sec. 10237. In the Wyoming statute an express disclaimer was inserted excepting "time consumed in going to and returning from work". Wyo. Rev.Stat.Ann. (1931), Secs. 63-103, 63-107. The Nevada statute limits underground work to eight hours, and provides that this shall "include the time employed, occupied, or consumed from the time of reaching the point of employment or place of work in any underground mine, and in returning to the surface from said point or place of work, and that it is the intent and purpose of this act that the period of time between

The pertinent distinction between such state legislation and the Fair Labor Standards Act is that the state legislatures themselves drew the inference of fact as to the working time of miners and enacted a general law on the subject, whereas the Congress failed to provide a general rule or definition in any particular industry. As appellants themselves have pointed out, Section 7 is not limited in its application to any single industry, but is designed to provide a law as to overtime compensation for every sort of work to which the statute is applicable. A detailed code for each industry would have been utterly impracticable. Application to each particular situation of the uniform rule laid down by Congress was wisely left to the courts. Therefore, in actions under the Fair Labor Standards Act, the courts must decide justiciable controversies as to working time upon the law and the facts in accordance with the principles governing their jurisdiction and procedure. Unless the facts are undisputed and only one reasonable inference may fairly be drawn therefrom, what is working time is always a question of fact for the court or jury. In view of the diverse legislation above cited, and the general diversity of opinion on the subject, it cannot successfully be argued in this case that only one fair and reasonable inference may be drawn from the facts and circumstances in evidence.

Although from a state court decision,[20] the following is highly persuasive upon the point under discussion:

"The trior of an issue of fact, whether judge or jury, where the ultimate fact to be proven depends on the surrounding facts and circumstances of the transaction out of which the ultimate fact grew, must by process of reasoning and deduction find the ultimate fact. If, from the undisputed facts and circumstances, two reasonable inferences of fact may be drawn, which inferences are conflicting, and the trior of the issue of fact has found in favor of one as the more reasonable, such finding will not be set aside on appeal, unless against the overwhelming weight of the evidence.

"The chancellor in this case heard and saw the witnesses testify, and observed their demeanor on the witness stand. It could have been reasonably inferred from the undisputed evidence that the transfer of the bank deposit was intended as a gift absolute, and, on the other hand, it could have been reasonably inferred that it was a transfer in trust. The chancellor found that the latter was the more reasonable inference. The two inferences, of course, were conflicting. The chancellor settled the conflict. This court cannot substitute its judgment for his."

That the federal rule is practically the same, see South Chicago Coal & Dock Co. v. Bassett,[21] wherein the petitioners urged that whether the decedent was a member of the crew was a question of law, since the facts were undisputed; but the Supreme Court held it to be one of fact, and said that even if the evidence permitted conflicting inferences there was enough to sustain the Commissioner's ruling. In Commissioner v. Horseshoe Lease Syndicate,[22] a case from the Fifth Circuit, the court said that a finding of fact must be upheld "even though conflicting inferences fairly might be drawn by reasonable men from the undisputed facts."[23]

All of these decisions are persuasive of the correctness of our construction of that portion of Rule No. 52, previously quoted, which is that, in actions tried upon the facts without a jury, a finding of fact should not be set aside as clearly erroneous if from the undisputed facts and circumstances two reasonable inferences were fairly deducible and the trial court found in favor of one as being the correct inference. Any other construction of the rule would be equivalent to holding that a reasonable inference fairly drawn from undis-

arriving at the point or place of work, in any underground working, and returning to the surface from such point of work shall not exceed eight (8) hours within any twenty-four hours."

[20] Huckaby v. Jenkins, 153 Miss. 359, 361, 121 So. 130, 131.

[21] 309 U.S. 251, 260, 60 S.Ct. 544, 84 L.Ed. 732, 738.

[22] 110 F.2d 748, 750.

[23] Cf. Turner v. New York, 168 U.S. 90, 95, 18 S.Ct. 38, 42 L.Ed. 392, wherein it was held that a mere inference of fact from the evidence was not reviewable by the Supreme Court on writ of error, that court being authorized to review only questions of law. This decision is authority for the proposition that such an inference as we are considering is a question of fact, and not a mixed question of law and fact as is being contended by appellants.

puted facts was clearly erroneous, which would be reducing the matter to an absurdity. On the other hand, as will be pointed out in the next paragraph, very serious consequences with reference to state mining statutes might follow a final authoritative ruling that the only reasonable inference deducible is that travel-time is not work-time.

If the contention is sound that the court below should have entered a declaratory judgment for appellants, as prayed, but could not correctly enter one against them, as it did, because only one reasonable inference could fairly be drawn from the undisputed facts in evidence (which was that travel-time was not work-time), then the question instantly presents itself as to whether or not the Utah and Arizona statutes are merely arbitrary fiats, violative of the Fourteenth Amendment. The appellants would probably not press their argument to this extent, and yet if it were clearly error for the court below to make the inference it did as to working time, it would be difficult to conceive of facts in existence sufficient to uphold a state statute in which the same inference is not only implicit but must serve as the basis for an absolute rule of law that travel-time underground is work-time.

■■ It being unnecessary for us to decide anything about the propriety of referring the case to a master for an accounting, since the parties have agreed that the court shall determine whether or not the employees are entitled to recover and, if so, how much,[24] the petition for a rehearing is denied.

SIBLEY, Circuit Judge, dissents as to the merits.

---

[24] By their conduct and agreements the parties have waived questions of misjoinder of causes of action, misjoinder of parties, and the right of trial by jury. Rules 20, 21, 38, and 39 of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. A common question of law and fact in a multiplicity of suits is not of itself an independent ground of equitable jurisdiction, either in the courts of Alabama or in the federal courts. Matthews v. Rodgers, 284 U.S. 521, at page 530, 52 S.Ct. 217, at page 221, 76 L.Ed. 447, and authorities cited. See, also, Tribette v. Illinois Cent. ■■■ R. Co., 70 Miss. 182, 12 So. 32, 19 L.R.A. 660, 35 Am.St.Rep. 642, which the Supreme Court of Alabama followed in Southern Steel Co. v. Hopkins, 174 Ala. 465, 57 So. 11, 40 L.R.A.,N.S., 464, Ann.Cas.1914B, 692, wherein the Alabama court reconsidered its former opinion and adopted the rule announced in the Tribette case upon the question of the jurisdiction of equity to prevent a multiplicity of suits. For a history of the latter case, see Cumberland Telephone & Telegraph Co. v. Williamson, 101 Miss. 1, 57 So. 559, and Griffith's Chancery Practice, Sec. 439, p. 461.